# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Case No. 19-303 (RBW) |
| | ) | |
| MARSHALL TAYLOR, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

The defendant, Marshall Taylor, is charged with three counts of wire fraud, in violation of 18 U.S.C. § 1343, <u>see</u> Indictment ¶¶ 1–16, ECF No. 3, and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), <u>see id.</u> ¶¶ 17–18, related to an alleged scheme to fraudulently obtain "lines of credit from financial institutions that [were] used to purchase automobiles[,]" <u>id.</u> ¶ 3.  Currently pending before the Court are thirty-three <u>pro se</u> pre-trial motions filed by the defendant, which, for clarity, the Court will reference by the electronic case filing numbers automatically assigned by the Court's CM/ECF system:

1.     Motion to Dismiss Counts 4 and 5 Aggr[a]vated Identity Theft 18 U[.]S[.]C[. §] 1028A([a])(1), ECF No. 131;

2.     Motion to Dismiss Counts 1, 2, 3 of Wire Fraud 18 U.S.C[. §] 1343 of Indictment, ECF No. 133;

3.     105-10 Motion to Challenge the Grand Jury Array, ECF No. 137;

4.     Dismissal of Case Based on Insufficiency of Indictment 6th Amendment Violation and Grand Jury Challenge, ECF No. 138;

5.     Writ of Violation of Right of Due Process and Not a Court of Record Thereby Dismissal, ECF No. 175;

6.     Government Failure to Prove Knowledge of Aggr[a]vated Identity Theft 18 U[.]S[.]C[. §] 1028[A] a Dismissal, ECF No. 176;

7.        4th Amendment Violation Tracking GPS Warrant, ECF No. 177;

8.        Motion to Suppress Evidence Found on 4th Amendment Violation of Tracking Warrant, ECF No. 178;

9.        Affidavit of Fact and Demand, ECF No. 179;

10.      Affidavit of Averments, ECF No. 180;

11.      Government Lack of Respon[s]e to Wire[] Fraud Challenge to Prove Transmi[ss]ion Left Pennsylvania Dismissal of Counts 1, 2, 3, ECF No. 181;

12.      Dismissal of Indictment Under C.R.F.P[.] Rule 12 Defects in Pleading of Multiplicitous Counts, ECF No. 182;

13.      Writ to Dismiss to Process in Rem for Lack of Minimum Contract, ECF No. 183;

14.      Writ of Demand to Dismiss Counts 2, 3, 4 of Indictment Double Jeopardy Clause Violation, ECF No. 184;

15.      Writ for Disclosure of Jen[c]ks Act Material and 18 U[.]S[.]C[.§] 3500, ECF No. 185;

16.      Writ for Disclosure of Grand Jury Material Dismissal of Charges Racial Bias Grand Jury & Forepe[r]son, ECF No. 186;

17.      Writ to Dismiss Indictment Based on Prosecution Misleading Grand[ ]Jury with Hearsay Not Informing Grand Jury Otherwise, ECF No. 187;

18.      Subject Matter and General Jurisdictional Challenge and Dismissal, ECF No. 189;

19.      Notice of Third Party Intervenor, ECF No. 191;

20.      Writ for Polygraph Testing, ECF No. 192;

21.      Writ of Dismissal of Case Defects in Pleadings Lack of Subject Matter Jurisdiction, ECF No. 196;

22.      Writ of Dismissal Cestui Que, ECF No. 199;

23.      Writ Defect of Pleading Indictment and Dismissal, ECF No. 200;

24.     Respon[s]e Motion to Government['’]s Omnibus Pretrial Motions, ECF No. 201;

25.     Multiciplicity Counts Dismissal of Indictment, ECF No. 203;

26.     Petitioner Motion in Limine to Exclude Certain Evidence, ECF No. 205;

27.     Writ Lack of 3 Essential Elements of Wire Fraud 1343 in Indictment, ECF No. 214;

28.     Writ of Modification of Release Conditions, ECF No. 215;

29.     Affidavit of Violations of Constitutional & Universal Declaration of Rights, ECF No. 216;

30.     Writ of Modification of Release Conditions, ECF No. 218;

31.     Dismissal of 18 U[.]S[.]C[. §] 1343 Wire[ ]Fraud, ECF No. 221;

32.     Emergency Writ for Hearing of Modification of Release Conditions, ECF No. 223; and

33.     Writ of Dismissal for Lack of Jurisdiction and Injured Party, ECF No. 224.

Upon careful consideration of the parties' submissions,[1] the Court concludes that it must (1) deny the defendant's motions to dismiss, see ECF No. 131; ECF No. 133; ECF No. 138; ECF No. 176; ECF No. 181; ECF No. 182; ECF No. 184; ECF No. 196; ECF No. 200; ECF No. 201; ECF No. 203; ECF No. 214; ECF No. 221; (2) grant in part and deny in part the defendant's motions seeking access to grand jury materials, see ECF No. 137; ECF No. 186; (3) deny the

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Government's Omnibus Response to Defendant's Pretrial Motions ("Gov't's 1st Opp'n"), ECF No. 75; (2) the Government's Second Omnibus Response to Defendant's Pretrial Motions ("Gov't 2d Opp'n"), ECF No. 125; (3) the Government's Third Omnibus Response to Defendant's Pretrial Motions ("Gov't's 3d Opp'n"), ECF No. 144; (4) the Government's Fourth Omnibus Response to Defendant's Pretrial Motions ("Gov't's 4th Opp'n"), ECF No. 194; (5) the defendant's Memorandum in Support of Petitioner Motion of Limine, ECF No. 206; (6) the Government's Fifth Omnibus Response to Defendant's Pretrial Motions ("Gov't's 5th Opp'n"), ECF No. 209; (7) the Government's Sixth Omnibus Response to Defendant's Pretrial Motions ("Gov't's 6th Opp'n"), ECF No. 228; and (8) the defendant's § 12:23.20. Memorandum of [L]aw in [S]upport of [M]otion to [D]ismiss Wire [F]raud Applicable [S]tatute [D]oes [N]ot [E]ncompass [C]onduct [C]harged Vagueness ("Def.'s Reply"), ECF No. 232.

defendant's motions challenging the procedures before the grand jury, see ECF No. 138; ECF No. 186; ECF No. 187; (4) deny as moot in part and deny as premature in part the defendant's motion for disclosure of Brady and Jencks Act material, see ECF No. 185; (5) deny in part and deny without prejudice in part the defendant's motion in limine to exclude certain evidence, see ECF No. 205; (6) deny the defendant's motions to suppress evidence pursuant to the Fourth Amendment, see ECF No. 177; ECF No. 178; (7) deny the defendant's motions challenging this Court's jurisdiction to adjudicate his case, see ECF No. 175; ECF No. 179; ECF No. 189; ECF No. 201; ECF No. 224; (8) grant in part and otherwise deny in part the defendant's motions for modification of his conditions of pretrial release, see ECF No. 215; ECF No. 216; ECF No. 218; ECF No. 223; and (9) deny the defendant's remaining motions, see ECF No. 180; ECF No. 183; ECF No. 191; ECF No. 192; ECF No. 199.

## I.      BACKGROUND

On September 25, 2019, a grand jury issued the Indictment in this case, charging the defendant with three counts of wire fraud, see Indictment ¶¶ 1–16, and two counts of aggravated identity theft, see id. ¶¶ 17–18.  According to the Indictment, the defendant "visited automobile dealerships in the Western District of Pennsylvania [area] and websites associated with automobile dealerships in order to shop for automobiles[,]" id. ¶ 2, including "Jim Shorkey North Hills Chrysler Dodge and Ram[,]" id. ¶ 6; "LW Automotive[,]" id. ¶¶ 7, 9, 12; "A&L Motor Sales[,]" id. ¶ 8; "Pittsburgh Auto Depot[,]" id. ¶¶ 10, 11; and "Jim Shorkey Mitsubishi[,]" id. ¶ 13.  In order to obtain "lines of credit from financial institutions that could be used to purchase automobiles[,]" the defendant allegedly "submitted applications through the dealerships, including through [the dealerships'] websites[.]"  Id. ¶ 3.  On these applications, the defendant purportedly represented "that he was employed by and earned a salary from

companies that, as he then well knew, did not employ him and did not exist." Id. ¶ 4.  He also allegedly "provided the dealerships and financial institutions with a social security number that he represented was his social security number, but that, as he then well knew, was not his true social security number." Id. ¶ 5.  According to the Indictment, "by means of these false and fraudulent pretenses and representations," the defendant "obtained funds from one or more of the financial institutions" to which he submitted applications, "which he then used to purchase automobiles from one or more of the dealerships." Id. ¶ 14.

The defendant was arrested on February 4, 2020, in the Western District of North Carolina, see Arrest of Marshall Taylor (Feb. 4, 2020), and had his initial appearance in this District before Chief Magistrate Judge Cynthia Reed Eddy on March 4, 2020, see Record of Magistrate's Proceedings at 1 (Mar. 4, 2020), ECF No. 15.  Christopher M. Capozzi was appointed counsel for the defendant pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A, on March 2, 2020, see Order Appointing Counsel at 1 (Mar. 2, 2020), ECF No. 13, and entered a plea of not guilty on behalf of the defendant during the arraignment on March 4, 2020, see Arraignment Plea at 1, ECF No. 19.  The case was assigned to Judge Donetta W. Ambrose.  See Text Order (Mar. 5, 2020), ECF No. 22.

On July 22, 2020, Mr. Capozzi filed two pre-trial motions on the defendant's behalf, seeking (1) the dismissal of the Indictment as insufficiently specific, see Motion to Dismiss Indictment (with Citation to Authority) at 1, ECF No. 61; and (2) the suppression of "the identifications of the [d]efendant[,]" Motion to Suppress (with Citation to Authority) ("Def.'s Mot. to Suppress") at 5, ECF No. 62.  On October 14, 2020, Judge Ambrose issued a Memorandum Order, concluding that "the Indictment is sufficient" because it "sets forth the statute charged, the time period of when the violations occurred, and [ ] enough facts to allow

[the d]efendant to prepare his defense[,]" Memorandum Order of Court at 3 (Oct. 14, 2020), ECF
No. 89, and scheduling a hearing to address the defendant's motion to suppress, see id. at 5.

On August 9, 2021, defense counsel Capozzi filed a motion to withdraw as counsel,
representing that "counsel and the [d]efendant [we]re no longer able to carry[ ]on meaningful
and productive communication concerning the relevant facts and circumstances, or even the
status, direction, and tempo of the case pending against the [d]efendant[,]" Motion to Withdraw
(with Citation to Authority) ¶ 4, ECF No. 111, and that "the nature, content[,] and tone of the
[d]efendant's most recent letter to counsel was tantamount to a letter of termination[,]" id. ¶ 5.
Thereafter, on August 13, 2021, the defendant filed a motion to proceed pro se.  See Proceed in
Propria Persona and for Extension of Time to File Pre-Trial Motions at 1, ECF No. 113.  On
September 15, 2023, following a hearing, Judge Ambrose granted both motions, see Text Order
(Sept. 15, 2021), ECF No. 117, and appointed Damien Schorr as standby counsel for the
defendant, see Order Appointing Counsel at 1 (Sept. 15, 2021), ECF No. 118.

On September 24, 2021, the defendant, now proceeding pro se, filed a motion to dismiss
the Indictment for lack of jurisdiction, see Verified[ ]Show Cause Denial of Jurisdiction at 1,
ECF No. 121, which Judge Ambrose denied on November 4, 2021, see Memorandum Order of
Court at 1 (Nov. 4, 2021), ECF No. 126.  From December 17, 2021, to January 17, 2022, the
defendant filed four additional pro se pre-trial motions, which are currently pending before the
Court, see ECF No. 131; ECF No. 133; ECF No. 137; ECF No. 138, and which the government
has opposed, see Gov't's 3d Opp'n.  On January 31, 2022, following Judge Ambrose taking
inactive senior status, see Notice (Jan. 11, 2022), ECF No. 135, the defendant's case was
reassigned to now-Chief Judge Cathy Bissoon, see Order of Clarification (Feb. 4, 2022), ECF
No. 139.  From June 3, 2022, through October 4, 2022, the defendant filed additional pro se

pre-trial motions, in addition to other unidentified submissions, which Judge Bissoon either "dismissed as nonsensical[,]" Text Order (June 6, 2022), ECF No. 150, or denied because they were "signed by an agent of [the d]efendant[,]" Text Order (Aug. 24, 2022), ECF No. 167.

On October 4 and 26, 2022, the defendant filed sixteen additional pro se pre-trial motions.  See ECF No. 175; ECF No. 176; ECF No. 177; ECF No. 178; ECF No. 179; ECF No. 180; ECF No. 181; ECF No. 182; ECF No. 183; ECF No. 184; ECF No. 185; ECF No. 186; ECF No. 187; ECF No. 189; ECF No. 191; ECF No. 192.  On November 8, 2022, the government filed its opposition to these sixteen motions, see Gov't's 4th Opp'n at 1, and on November 14, 2022, the defendant filed an additional pro se pre-trial motion, see ECF No. 196. On November 22, 2022, Judge Bissoon issued an Order, stating that "[t]he Court cannot schedule a hearing to resolve [the d]efendant's pending motions if he keeps on filing additional motions[,]" and thus the "[d]efendant w[ould] be granted until [December 23, 2022] to file any remaining pretrial motions." Text Order (Nov. 22, 2022), ECF No. 198 (emphasis omitted). Judge Bissoon further directed the defendant to "file a notice advising the Court that he does not intend to file any additional pretrial motions" by that same date. Id.  Prior to the December 23, 2022 deadline set by Judge Bissoon, the defendant filed three additional pro se pre-trial motions. See ECF No. 199; ECF No. 200; ECF No. 201.  However, the defendant did not file a notice in accordance with Judge Bissoon's November 22, 2022 Order, but instead continued to file pre-trial motions on January 10, 2023, see ECF No. 203, and January 24, 2023, see ECF No. 205.  On February 6, 2023, the government filed its opposition to these additional pro se pre-trial motions, see Gov't's 5th Opp'n at 1, and on February 13, 2023, Judge Bissoon scheduled a hearing to resolve the pending pre-trial motions, see Text Order (Feb. 13, 2023), ECF No. 211.  On the same day Judge Bissoon scheduled the hearing, the defendant filed two

additional pre-trial motions, see ECF No. 214; ECF No. 215, as well as another pre-trial motion on February 16, 2023, see ECF No. 216.

On March 6, 2023, this case was reassigned to the undersigned.  See Order Reassigning Case (Mar. 6, 2023), ECF No. 217.  The undersigned scheduled a status hearing for April 20, 2023, see Order at 1 (Mar. 23, 2023), ECF No. 222, and Judge Bissoon vacated the pre-trial motion hearing that she had scheduled, see Order (Mar. 20, 2023), ECF No. 219.  Between the reassignment of this case to the undersigned on March 6, 2023, and the Court's first status hearing on April 20, 2023, the defendant filed four additional pro se pre-trial motions.  See ECF No. 218; ECF No. 221; ECF No. 223; ECF No. 224.

At the first status hearing conducted by this Court on April 20, 2023, the government was ordered to file a sixth opposition to the remaining motions filed by the defendant that it had not previously addressed in its first five oppositions.  See Pre-Trial Scheduling Order at 1–2 (Apr. 27, 2023), ECF No. 227.  In addition, due to the defendant's repeated abuse of the motions practice and disregard for the deadlines set by the judges who had previously presided over this case, the Court ordered that "the defendant shall not file any further pro se motions absent prior authorization by the Court."  Id. at 1.  Finally, because the defendant had represented "for the first time that, despite having chosen to represent himself, he desired counsel to represent him at trial[,]" id. at 2 n.1, the Court set an additional briefing schedule for now-trial-counsel Schorr to file trial-related motions on the defendant's behalf that he deemed appropriate, see id. at 2.

Following that status hearing, on April 28, 2023, the government filed its sixth opposition, see Gov't's 6th Opp'n at 1, and on June 1, 2023, the defendant filed his reply in

support of his motions, see Def.'s Reply at 1.[2]  Thereafter, on July 24, 2023, the Court issued an

Order ruling on the defendant's thirty-three pro se pre-trial motions.  See Order at 4–8

(July 24, 2023), ECF No. 249.  This Memorandum Opinion details the Court's rationale for its

rulings.[3]

## II.   STANDARD OF REVIEW

"[P]ro se filings are liberally construed because 'implicit in the right of

self-representation is an obligation on the part of the court to make reasonable allowances to

protect pro se litigants from inadvertent forfeiture of important rights because of their lack of

legal training.'"  United States v. Sharpe, No. 20-cv-2490, 2021 WL 4453623, at *3 (E.D. Pa.

Sept. 29, 2021) (quoting Higgs v. Att'y Gen. of the U.S., 655 F.3d 333, 339 (3d Cir. 2011)).

However, "[w]hile courts do give greater leeway to pro se litigants on procedural rules, there are

limits to this flexibility and pro se litigants must still comply with the same procedural rules that

apply to other litigants."  Id. (citing Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir.

2013)).

---

[2] At the time the April 20, 2023 status hearing was conducted, the pre-trial motion to suppress filed by the defendant's original counsel prior to counsel's withdrawal from this case was also still pending.  See generally Def.'s Mot. to Suppress.  The defendant had previously informed Judge Ambrose that he "wishe[d] to proceed with th[is]. . . motion" and that he "want[ed] to have the [evidentiary] hearing [regarding this motion conducted] after his additional [pro se] motions are filed[ and ]briefed."  Minute ("Min.") Entry at 1 (Nov. 15, 2021), ECF No. 128.  Accordingly, after the defendant's pro se pre-trial motions were fully briefed, the Court scheduled an evidentiary hearing regarding the defendant's counseled motion to suppress.  See Order at 2 (June 15, 2023), ECF No. 236.  Although this motion was filed by the defendant's prior attorney, the defendant opted to represent himself on this motion.  See Notice to Court Re: Suppression Hearing at 1, ECF No. 241.  At the evidentiary hearing held on July 27, 2023, this Court denied the defendant's motion.  See Order at 1 (July 31, 2023), ECF No. 258.

[3] Typically, the Court issues a Memorandum Opinion and accompanying Order contemporaneously.  However, in this case, "in light of the [July 28, 2023] pre-trial conference and [the then-forthcoming] trial in this case[,]" Order at 3 (July 24, 2023), ECF No. 249, the Court issued the July 24, 2023 Order prior to issuing this Memorandum Opinion "so that the parties [we]re promptly informed of the Court's decision and may appropriately prepare for trial[,]" id. at 4.  Furthermore, although the defendant informed the Court of his desire to plead guilty on August 14, 2023, see Consent Motion to Hold Trial and Filing Deadlines in Abeyance ¶ 2, ECF No. 262, and the Court has scheduled a plea hearing for September 6, 2023, see Order at 1 (Aug. 15, 2023), ECF No. 263, the Court decided to still issue this Memorandum Opinion explaining the rationale for its rulings in the July 24, 2023 Order.

### III.   ANALYSIS

The defendant's pro se motions fall into six categories: (1) motions to dismiss; (2) procedural challenges; (3) Fourth Amendment challenges; (4) jurisdictional challenges; (5) challenges to the defendant's conditions of pretrial release; and (6) miscellaneous challenges.[4] The Court will consider each category of motions in turn.

**A.    Motions to Dismiss (ECF Nos. 131, 133, 138, 176, 181, 182, 184, 196, 200, 201, 203, 214, & 221)**

The defendant moves to dismiss both the wire fraud and aggravated identity theft counts of the Indictment due to alleged defects in the Indictment.  First, the defendant argues that the Indictment fails to include essential elements of each charge.  See ECF No. 133 (seeking dismissal of Counts One through Three, i.e., the wire fraud counts); ECF No. 181 (same); ECF No. 214 (same); ECF No. 221 (same); ECF No. 131 (seeking dismissal of Counts Four and Five, i.e., the aggravated identity theft counts); ECF No. 176 (same); ECF No. 138 at 3 (arguing that the Indictment did not contain language charging the required mental state); ECF No. 200 at 2 (same); ECF No. 201 at 2 (same).  Second, the defendant contends that the charges are impermissibly multiplicitous.  See ECF No. 182 at 1 (arguing that the counts stated are multiplicitous); ECF No. 184 at 1 (same); ECF No. 196 at 1 (same); ECF No. 200 at 2 (same); ECF No. 201 at 3 (same); ECF No. 203 at 1–2 (same).

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), the Court may "review the sufficiency of the government's pleadings on 'a motion alleging a defect in the indictment.'" United States v. Bergrin, 650 F.3d 257, 268 (3d Cir. 2011).  "The [C]ourt is limited, however, in what it may consider during this analysis" and must focus narrowly "on whether the facts alleged

---

[4] Although the Court has grouped the defendant's motions by these categories, a couple of the motions contain multiple bases for relief and are thus addressed in multiple categories.

in the indictment, if accepted as entirely true, state the elements of an offense and could result in

a guilty verdict." Id.; see also United States v. DeLaurentis, 230 F.3d 659, 660–61

(3d Cir. 2000) ("[A] pretrial motion to dismiss an indictment is not a permissible vehicle for

addressing the sufficiency of the government's evidence.").  "Generally speaking, [a motion

pursuant to Rule 12(b)(3) asserting a defect in the Indictment] is a narrow, limited analysis

geared only towards ensuring that legally deficient charges do not go to a jury." Bergrin, 650

F.3d at 268.

　　　　For the following reasons, the Court concludes that it must deny the defendant's motions

to dismiss.

1. **The Defendant's Motions Seeking Dismissal of the Indictment on the Grounds that
   the Indictment Fails to Include Essential Elements (ECF Nos. 131, 133, 138, 176,
   181, 214, 221, 200, 201)**

　　　　First, the Court addresses the defendant's motions seeking dismissal of the Indictment on

the grounds that the Indictment fails to include certain essential elements.  See ECF No. 131;

ECF No. 133; ECF No. 138; ECF No. 176; ECF No. 181; ECF No. 214; ECF No. 221; ECF

No. 200; ECF No. 201.

　　　　Pursuant to Federal Rule of Criminal Procedure 7(c)(1), an indictment must contain "a

plain, concise, and definite written statement of the essential facts constituting the offense

charged[.]" Fed. R. Crim. P. 7(c)(1).  Specifically,

> [a] facially sufficient indictment (1) contains the elements of the offense intended
> to be charged, (2) sufficiently apprises the defendant of what he [or she] must be
> prepared to meet, and (3) allows the defendant to show with accuracy to what
> extent he [or she] may plead a former acquittal or conviction in the event of a
> subsequent prosecution.

United States v. Stock, 728 F.3d 287, 292 (3d Cir. 2013) (internal quotation marks omitted).

"Usually, a recitation of the statutory language satisfies the first requirement, so long as there is

sufficient factual orientation to permit a defendant to prepare his [or her] defense and invoke

double jeopardy." Id. (internal quotation marks omitted).  Along the same lines, "a factual orientation that includes a specification of the time period of the alleged offense is sufficient for the second and third requirements." Id.  And, "a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence." DeLaurentis, 230 F.3d at 660.  Instead, "the Court's review is confined to the facts alleged in the indictment." United States v. Miah, 546 F. Supp. 3d 407, 418 (W.D. Pa. 2021) (citing Bergrin, 650 F.3d at 268).

The Court begins its analysis by considering the defendant's motions to dismiss the wire fraud charges—Counts One through Three, before turning to the defendant's motions to dismiss the aggravated identity theft charges—Counts Four and Five, and then addressing the defendant's motions to dismiss all charges for failure to allege the required mental state.

a.      **Counts One, Two, and Three – Wire Fraud (ECF Nos. 133, 181, 214, & 221)**

The defendant argues that Counts One through Three should be dismissed because there is (1) a "lack of evidence and proof" that the applications he allegedly submitted traveled in "interstate commerce[,]" ECF No. 133 at 1, and thus "there is no wire fraud if the transmi[ss]ion never left Pennsylvania[,]" ECF No. 181 at 2; and (2) a "lack of . . . proof that [the defendant] denied the victim the right to control its assets[,]" ECF No. 214 at 1–2.  In response, the government argues that (1) "[t]he allegations of the Indictment . . . establish each of the[] elements[ of wire fraud,]" Gov't's 1st Opp'n at 3; and (2) "the Indictment adequately alleges a scheme to defraud others of tangible property" through the defendant's alleged "misrepresentations about his work history, earnings, and identity[,]" Gov't's 6th Opp'n at 2. The Court will consider each of the defendant's arguments in turn.

Under 18 U.S.C. § 1343,

[w]hoever, having devised or intend[ed] to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.  In order to prove wire fraud beyond a reasonable doubt, the government must present evidence of the following elements: "(1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of the mails or interstate wire communications in furtherance of the scheme."  United States v. Al Hedaithy, 392 F.3d 580, 590 (3d Cir. 2004) (internal quotation marks omitted).

The defendant first argues that the government has failed "to prove beyond a reasonable doubt that the pertinent wire transmission actually crossed state lines[,]" ECF No. 133 at 2, i.e., the third element of the alleged wire fraud offenses.  However, contrary to the defendant's argument, the government is not required "to prove beyond a reasonable doubt that the pertinent wire transmission actually crossed state lines[,]" id., at this stage of the case.  Rather, in an indictment, the government need only set forth "the elements of the offense intended to be charged[,]" Stock, 728 F.3d at 292 (internal quotation marks omitted), which it has done here by asserting that the defendant "did transmit and cause to be transmitted in interstate commerce, by means of a wire communication, the following signs and signals[,]" Indictment ¶ 16, namely, the three "[c]redit application[s] submitted through [a] website associated with LW Automotive in connection with the attempted acquisition of a Land Rover[,]" id.  Compare id. (alleging that the defendant "did transmit and cause to be transmitted in interstate commerce" certain identified signs and signals), with 18 U.S.C. § 1343 (requiring, as an element of wire fraud, that an

individual "transmit[] or cause[] to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce").  Moreover, by alleging the dates and methods of submission of the allegedly fraudulent applications, see Indictment ¶ 16 (alleging that the defendant submitted applications on October 19, 2018; October 23, 2018; and November 7, 2018, "through [a] website"), the Indictment contains sufficient factual allegations to "apprise the defense that the [g]overnment will seek to prove[,]" Bergrin, 650 F.3d at 269, that the applications were "transmitted in interstate commerce" via the internet, Indictment ¶ 16.  See id. ¶¶ 7, 9, 12, 16 (asserting that the defendant submitted online applications via dealership websites).  Therefore, the Court concludes that the Indictment adequately alleges "the use of the mails or interstate wire communications in furtherance of the [defendant's] scheme." Al Hedaithy, 392 F.3d at 590 (internal quotation marks omitted).

Second, the defendant argues that the government has failed to "prov[e] that the defendant denied the victim the right to control it[s] assets by depriving it of information necessary to make discretionary economic dec[i]s[]ions."  ECF No. 214 at 1.  The defendant appears to refer to a line of cases from the United States Court of Appeals for the Second Circuit, see id. (citing United States v. Carlo, 507 F.3d 799, 802 (2d Cir. 2007); United States v. Rossomando, 144 F.3d 197, 201 n.5 (2d Cir. 1998); United States v. Dinome, 86 F.3d 277, 284 (2d Cir. 1996)), which held that a defendant can be convicted of wire fraud if he or she schemes to deprive the victim of "potentially valuable economic information" "necessary to make discretionary economic decisions[,]" United States v. Percoco, 13 F.4th 158, 170 (2d Cir. 2021) (internal quotation marks omitted) (vacated, Kaloyeros v. United States, 143 S. Ct. 2490 (2023)). However, in Ciminelli v. United States, the Supreme Court overruled this line of cases, holding that "the right-to-control theory is not a valid basis for liability under § 1343" because "the

federal fraud statutes criminalize only schemes to deprive people of traditional property interests." 598 U.S. __, __, 143 S. Ct. 1121, 1124 (2023).

In any event, both <u>Ciminelli</u> and the rejected "right-to-control" theory of wire fraud are irrelevant here, as the government has not alleged that the defendant "denied the victim the right to control it[s] assets by depriving it of info[r]mation necessary to make discretionary economic dec[i][]sions." ECF No. 214 at 1. Rather, the government has alleged that the defendant, "well knowing at the time that the pretenses, representations[,] and promises were false and fraudulent[,]" Indictment ¶ 1, "submitted applications through the dealerships . . . for lines of credit from financial institutions[,]" <u>id.</u> ¶ 3, which "he then used to purchase automobiles from one or more of the dealerships[,]" <u>id.</u> ¶ 14. Accordingly, the "money or property" that the defendant allegedly obtained "by means of false or fraudulent pretenses, representations, or promises[,]" 18 U.S.C. § 1343, was (1) the "lines of credit" that he obtained "from financial institutions[,]" Indictment ¶ 3, and (2) the "automobiles" that he purchased with that credit, <u>id.</u> ¶ 14—not any "right to control [ ] assets[,]" ECF No. 214 at 1. <u>Cf.</u> <u>Percoco</u>, 13 F.4th at 171 (rejecting challenge to a right to control jury instruction where the government had alleged that the defendants "deprived [a nonprofit corporation] of 'potentially valuable economic information' that would have resulted from a truly fair and competitive [bidding] process" by engaging in a scheme to rig the bidding processes for New York State-funded projects (internal citation omitted)). Therefore, the Court concludes that the Indictment sufficiently alleges that "money or property[,]" 18 U.S.C. § 1343, was "an object of [the defendant's] fraud[,]" <u>Kelly v. United States</u>, __ U.S. __, __, 140 S. Ct. 1565, 1571 (2020) (internal quotation marks omitted).

Accordingly, the Court must deny the defendant's motions to dismiss Counts One through Three of the Indictment. <u>See</u> ECF No. 133; ECF No. 181; ECF No. 214; ECF No. 221.

**b.      Counts Four and Five – Aggravated Identity Theft (ECF Nos. 131 & 176)**

The defendant moves to dismiss Counts Four and Five because he "could not be convicted of aggr[a]vated identity theft under 18 U.S.C[. §] 1028A([a])(1) without proof that he knew that the number on the counterfeit social security and alien registration cards that [he allegedly] used in fact belonged to other people[.]"  ECF No. 131 at 3.  The defendant cites the Supreme Court's decision in Flores-Figueroa v. United States, 556 U.S. 646 (2009), arguing that under Flores-Figueroa, a "defendant [must have] kn[o]w[n] that the means of identification he or she unlawfully transferred, possessed[,] or used in fact belonged to 'another person[,]'" ECF No. 131 at 3.  In response, the government argues that "Flores-Figueroa is a case about what is required to prove a 'knowing' violation of 18 U.S.C. § 1028A(a)(1), not what is required to plead one" and that "[e]ach of the[] elements [of § 1028A(a)(1) is] plainly addressed in Counts Four and Five[ of the Indictment], which also cite the statute that [the defendant] is accused of violating and identify the date that his conduct occurred."  Gov't's 1st Opp'n at 5 (emphasis added).

Under 18 U.S.C. § 1028A(a)(1), "[w]hoever, during and in relation to [certain enumerated felonies, including wire fraud,] knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of [two] years."  18 U.S.C. § 1028A(a)(1).  The offense contains three elements: "(1) [that] the defendant knowingly transferred, possessed, or used a means of identification of another person; (2) [that] the defendant did so without lawful authority; and (3) [that] the defendant did so during and in relation to [the commission of wire fraud.]"  United States v. Rashid, 654 F. App'x 54, 57 (3d

Cir. 2016).  The Court concludes that the Indictment adequately alleges these three elements and

therefore adequately alleges that the defendant violated § 1028A(a)(1).

> Counts Four and Five state that, on or about October 19, 2018, and October 23, 2018,

> in the Western District of Pennsylvania, the defendant . . . during and in relation
> to the felony violation[s] of Wire Fraud as set forth in Count[s] One[ and Two],
> did knowingly possess and use, without lawful authority, the means of
> identification of another person, specifically the social security number of an
> individual known to the grand jury as C.W.

Indictment ¶¶ 17–18.  These allegations sufficiently set forth "the elements of the offense

intended to be charged[,]" Stock, 728 F.3d at 292 (internal quotation marks omitted), specifying

that the defendant "knowingly possess[ed] and use[d]" C.W.'s social security number "without

lawful authority" "during and in relation to the felony violation[s] of Wire Fraud as set forth in

Count[s] One[ and Two]," Indictment ¶¶ 17–18, as well as providing "a specification of the time

period of the alleged offense[,]" Stock, 728 F.3d at 292; see Indictment ¶ 17 (specifying that the

charge in Count Four allegedly occurred "[o]n or about October 19, 2018"); Indictment ¶ 18

(specifying that the charge in Count Five allegedly occurred "[o]n or about October 23, 2018").

> As the government acknowledges in its opposition, see Gov't's 1st Opp'n at 5, at trial, it

will need to "show that the defendant knew that the 'means of identification' [that] he

. . . unlawfully [ ] possessed[] or used, in fact, belonged to 'another person[,]'" Flores-Figueroa,

556 U.S. at 647 (emphasis in original).  As noted earlier, "a pretrial motion to dismiss an

indictment is not a permissible vehicle for addressing the sufficiency of the government's

evidence[,]" DeLaurentis, 230 F.3d at 660, and Flores-Figueroa only addressed the government's

burden of proof at trial regarding aggravated identity theft, not the requirements to sufficiently

allege the offense in an indictment, see Flores-Figueroa, 556 U.S. at 647 ("The question is

whether the statute requires the [g]overnment to show that the defendant knew that the 'means of

identification' he or she unlawfully transferred, possessed, or used, in fact, belonged to 'another

person.'" (first emphasis added)).  Therefore, the Court concludes that the Indictment sufficiently

alleges that the defendant committed aggravated identity theft, and must also deny the

defendant's motions to dismiss Counts Four and Five.  See ECF No. 131; ECF No. 176.

      **c.**    **The Required Mental States for the Offenses Charged in the Indictment (ECF Nos. 138, 200, & 201)**

The defendant moves to dismiss all counts of the Indictment on the basis that "[t]he

Indictment did[ ]n[o]t contain language charging the required mental state[s]" for the offenses he

is charged with committing.  ECF No. 138 at 3.  The government does not appear to present any

argument in response.  See generally Gov't's 1st Opp'n; Gov't's 2d Opp'n; Gov't's 3d Opp'n;

Gov't's 4th Opp'n; Gov't's 5th Opp'n; Gov't's 6th Opp'n.

Beginning with the wire fraud offenses, the Court concludes that the Indictment

sufficiently alleges the requisite mens rea for wire fraud.  As the defendant correctly notes,

see ECF No. 138 at 3, "[a]n essential element of . . . wire fraud that the [g]overnment must

establish beyond a reasonable doubt is that the defendant possessed the specific intent to

defraud[,]" United States v. Andrews, 811 F. Supp. 2d 1158, 1171 (E.D. Pa. 2011).  "To act with

an 'intent to defraud' means to act knowingly and with the intention or the purpose to deceive or

to cheat."  3d Cir. Model Jury Instructions § 6.18.1341-4 (2022).  The Indictment states that "the

defendant . . . devised and intended to devise a scheme and artifice to defraud and for obtaining

money and property by means of false and fraudulent pretenses, representations, and promises,

well[-]knowing at the time that the pretenses, representations[,] and promises were false and

fraudulent when made."  Indictment ¶ 1 (emphasis added).  It also states that the defendant, "for

the purpose of executing and attempting to execute the scheme and artifice to defraud, did

transmit and cause to be transmitted in interstate commerce" the three credit applications

submitted on October 19, 2018; October 23, 2018; and November 7, 2018.  Id. ¶ 16 (emphasis added).

This language sufficiently alleges that the defendant "act[ed] knowingly and with the intention or the purpose to deceive or to cheat[,]" 3d Cir. Model Jury Instructions § 6.18.1341-4, when he "devised . . . [his] scheme[,]" Indictment ¶ 1, and transmitted the wires, see id. ¶ 16, and thus "possessed the specific intent to defraud[,]" Andrews, 811 F. Supp. 2d at 1171.  Moreover, the Indictment provides additional allegations demonstrating that the defendant "act[ed] knowingly[.]"  3d Cir. Model Jury Instructions § 6.18.1341-4.  Specifically, the Indictment asserts that each of the defendant's alleged actions were "part of the scheme and artifice to defraud" that the defendant knowingly devised.  See Indictment ¶¶ 2–14 ("It was part of the scheme and artifice to defraud that" the defendant (1) "visited automobile dealerships . . . and [their] websites[,]" (2) "submitted applications through the dealerships . . . for lines of credit[,]" (3) "represented on these applications that he was employed by and earned a salary from companies that, as he then well knew, did not employ him and did not exist[,]" (4) "provided the dealerships and financial institutions with a social security number, but that, as he then well knew, was not his true social security number[,]" (5) "submitted [multiple] application[s] for credit[,]" and (6) "by means of these false and fraudulent pretenses and representations, obtained funds from one or more of the financial institutions, which he then used to purchase automobiles[.]").  It also specifically notes that the defendant "well knew" that his representations on these credit applications regarding his employment, salary, and social security number were false.  See id. ¶¶ 4–5.  Furthermore, the Indictment specifically alleges that the defendant transmitted the wires "for the purpose of executing . . . [his] scheme[.]"  Id. ¶ 16.  Accordingly, because the Indictment clearly sets forth allegations that the defendant possessed

the "specific intent to defraud[,]" <u>Andrews</u>, 811 F. Supp. 2d at 1171, the Court must deny the

defendant's motions challenging the sufficiency of the allegations regarding the wire fraud

counts, <u>see</u> ECF No. 138; ECF No. 200.

Turning to the aggravated identity theft offenses, the Court concludes that the Indictment

sufficiently alleges the requisite mens rea.  Under 18 U.S.C. § 1028A, a "defendant [must have]

<u>knowingly</u> transferred, possessed, or used a means of identification of another person[.]"  <u>United</u>

<u>States v. Roberts</u>, 597 F. App'x 72, 75 n.7 (3d Cir. 2015) (emphasis added).  Here, both Counts

Four and Five of the Indictment allege that the defendant "did <u>knowingly</u> possess and use,

without lawful authority, the means of identification of another person, specifically the social

security number of an individual known to the grand jury as C.W."  Indictment ¶¶ 17–18

(emphasis added).  Accordingly, because the Indictment "contains the [mens rea] element[] of"

§ 1028A, the Court concludes that it is "facially sufficient[.]"  <u>Stock</u>, 728 F.3d at 292; <u>see</u> <u>id.</u>

(stating that "a recitation of the statutory language [usually] satisfies the [ ] requirement" that an

indictment "contain the elements of the offense intended to be charged" in order to be facially

sufficient).  Therefore, the Court must deny the defendant's motions challenging the sufficiency

of the allegations regarding the aggravated identity theft counts.  <u>See</u> ECF No. 138; ECF

No. 200; ECF No. 201.

**2. Multiplicity (ECF Nos. 182, 184, 196, 200, 201, & 203)**

The Court having concluded that it must deny the defendant's motions to dismiss alleging

that the Indictment fails to include essential elements of each charge, the Court now turns to the

defendant's motions to dismiss the Indictment due to alleged multiplicity.  Specifically, the

defendant argues that, "[u]nder [Federal] Rule [of Criminal Procedure] 12[](b)[](2)[,] [ ]

[m]ultiplicitous counts [should] be dismissed[,]" because "charging the same offense in more

than one count . . . makes an indictment defective and [i]nvalid[.]"  ECF No. 200 at 1–2; <u>see also</u>

ECF No. 182 at 1 (raising similar arguments); ECF No. 184 at 1 (same); ECF No. 196 at 1

(same); ECF No. 201 at 3; ECF No. 203 at 1–2 (same).  In response, the government argues that

"Counts One, Two, and Three each identify a particular credit application, submitted on a

separate date through a particular dealer's website[,]" Gov't's 4th Opp'n at 5–6, and thus "each

transmission can be properly charged as a separate count of the Indictment[,]" id. at 6, and

Counts Four and Five each identify different "us[es of] C.W.'s identity [ ], on two separate dates,

in connection with two separate credit applications," id.

     "Multiplicity is the charging of a single offense in separate counts of an indictment."

United States v. Kennedy, 682 F.3d 244, 254 (3d Cir. 2012).  "A multiplicitous indictment risks

subjecting a defendant to multiple sentences for the same offense, an obvious violation of the

Double Jeopardy Clause's protection against cumulative punishment."  Id. at 255.  Because

"[t]he purpose of the constitutional protection against duplicative punishment is 'to ensure that

the sentencing discretion of courts is confined to the limits established by the legislature[,]'" id.

(quoting Ohio v. Johnson, 467 U.S. 493, 499 (1984)), to test for multiplicity, courts consider

"whether the legislature intended to make separately punishable the different types of conduct

referred to in the various counts[,]" as well as "whether proof of one offense charged requires an

additional fact that proof of the other offense does not necessitate[,]" United States v. Stanfa,

685 F.2d 85, 87 (3d Cir. 1982) (internal quotation marks omitted).

     The Court will address (1) whether the wire fraud charges—Counts One through Three—

are multiplicitous, (2) whether the aggravated identity theft charges—Counts Four and Five—

multiplicitous, and (3) whether the wire fraud charges are multiplicitous of the aggravated

identity theft charges.

### i.       Whether Counts One, Two, and Three Are Multiplicitous

The federal wire fraud statute, 18 U.S.C. § 1343, states that

> [w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.  As confirmed by "[c]ourts that have addressed this issue[,]" "[t]he text of the statute suggests [that] each individual transmission in furtherance of a scheme is a separate unit of prosecution."  United States v. Hampton, No. 15-cr-302, 2021 WL 1088289, at *7 (E.D. Pa. Mar. 22, 2021) (collecting cases); see United States v. Schall, 371 F. Supp. 912, 928 (W.D. Pa. 1974) ("Courts have consistently held in interpreting the Mail Fraud Statute that each mailing constitutes a separate offense and [that] the counts of an indictment charging separate and distinct mailing offenses involving the same scheme to defraud cannot be dismissed as multiplicitous.").  Here, although Counts One, Two, and Three all concern "[c]redit application[s] submitted through [a] website associated with LW Automotive in connection with the attempted acquisition of a Land Rover[,]" Indictment ¶ 16, each of the Counts refers to an application transmitted on a different day, see id. (asserting that the conduct charged in Count One occurred on "October 19, 2018[;]" the conduct charged in Count Two occurred on "October 23, 2018[;]" and the conduct charged in Count Three occurred on "November 7, 2018").  Accordingly, because Counts One, Two, and Three each refer to a different "individual transmission[,]" Hampton, 2021 WL 1088289, at *7, each count "is a separate unit of prosecution[,]" id., and thus each count "a single offense[,]" United States v. LaBar, 506 F.

Supp. 1267, 1277 (M.D. Pa. 1981).  Therefore, the Court concludes that Counts One through

Three are not multiplicitous.

### ii.      Whether Counts Four and Five Are Multiplicitous

The federal aggravated identity theft statute, 18 U.S.C. § 1028A, provides that

"[w]hoever, during and in relation to any felony violation enumerated in subsection (c),

knowingly transfers, possesses, or uses, without lawful authority, a means of identification of

another person shall, in addition to the punishment provided for such felony, be sentenced to a

term of imprisonment of [two] years."  18 U.S.C. § 1028A(a)(1).  Although the Third Circuit

does not appear to have addressed the issue raised by the defendant, other courts have

determined that each individual use of the "means of identification of another person[,]" id., may

properly be charged as individual counts.  See United States v. Abdi, No. 13-cr-484 (JEC/RGV),

2014 WL 3828165, at *11 (N.D. Ga. Aug. 4, 2014) ("While it is undisputed that Counts Thirteen

through Twenty-three are premised on the underlying conduct set forth in Count Twelve, i.e.,

that Salma Hussein used another person's permanent resident card and alien registration number,

she is charged with using these items on eleven separate occasions, and these counts are

therefore not multiplicitous." (underline added)); United States v. Hinojosa, No. 14-cr-38

(RWS), 2015 WL 999893, at *9 (N.D. Ga. Mar. 6, 2015) ("[E]ach allegedly unlawful use of the

same identification documents . . . supports separate counts charging a violation of § 1028A[.]").

The Court agrees with the courts in both Abdi and Hinojosa that § 1028A authorizes the

separate charging of each individual "transfer[], possess[ion], or use[]" of "a means of

identification of another person[.]"  18 U.S.C. § 1028A(a)(1).  Here, although Counts Four and

Five of the Indictment both allege that the defendant "did knowingly possess and use, without

lawful authority . . . the social security number of an individual known to the grand jury as

C.W.[,]" Indictment ¶¶ 17–18, each count refers to conduct that occurred on a different day,

compare id. ¶ 17 (referring to conduct that occurred "[o]n or about October 19, 2018"), with id.

¶ 18 (referring to conduct that occurred "[o]n or about October 23, 2018").  Moreover, each

count refers to conduct that occurred "during and in relation to [a different] felony violation[,]"

18 U.S.C. § 1028A(a)(1), as Count Four refers to the allegedly fraudulent wire transmission that

occurred on October 19, 2018, see Indictment ¶ 17, which is charged in Count One, see id. ¶ 16,

and Count Five refers to the allegedly fraudulent wire transmission that occurred on

October 23, 2018, see id. ¶ 18, which is charged in Count Two, see id. ¶ 16.  Accordingly,

because Counts Four and Five each refer to a separate "transfer[], possess[ion], or use[]" of "a

means of identification of another person[,]" 18 U.S.C. § 1028A(a)(1), the Court concludes that

each count "is a separate unit of prosecution[,]" Hampton, 2021 WL 1088289, at *7, and thus

each "a single offense[,]" LaBar, 506 F. Supp. at 1277.  Therefore, the Court concludes that

Counts Four and Five are not multiplicitous.

### iii.   Whether Counts One Through Three Are Multiplicitous of Counts Four and Five

To the extent that the defendant is arguing that the wire fraud counts—Counts One

through Three—and the aggravated identity theft counts—Counts Four and Five—charge the

same conduct, see ECF No. 182 at 1 (referencing the Blockburger test); ECF No. 184 at 1

(same); ECF No. 201 at 2 (same); ECF No. 203 at 1 (same), the Court concludes that these

counts are not multiplicitous.

"In Blockburger v. United States, 284 U.S. 299 . . . (1932), the Supreme Court provided a

test to determine whether the legislature 'intended that two statutory offenses be punished

cumulatively.'"  United States v. Hodge, 870 F.3d 184, 194 (3d Cir. 2017) (quoting Albernaz v.

United States, 450 U.S. 333, 337 (1981)).  Under Blockburger, "where the same act or

transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger, 284 U.S. at 304. This "test serves the 'function of identifying congressional intent to impose separate sanctions for multiple offenses arising in the course of a single act or transaction[,]'" Hodge, 870 F.3d at 194 (quoting Iannelli v. United States, 420 U.S. 770, 785 n.17 (1975)), however, it "is merely one 'rule of statutory construction[]' [and] does not control 'where, for example, there is a clear indication of contrary legislative intent[,]'" id. (quoting Albernaz, 450 U.S. at 340).

It is clear that wire fraud and aggravated identity theft are "two [separate] offenses" under Blockburger. 284 U.S. at 304. As noted above, see supra Section III.A.1.a, the federal wire fraud statute, 18 U.S.C. § 1343, contains three elements: "(1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of the mails or interstate wire communications in furtherance of the scheme." Al Hedaithy, 392 F.3d at 590. And, as also noted above, see supra Section III.A.1.b, the federal aggravated identity theft statute, 18 U.S.C. § 1028A, also contains three elements: "(1) the defendant knowingly transferred, possessed, or used a means of identification of another person; (2) the defendant did so without lawful authority; and (3) the defendant did so during and in relation to [the commission of wire fraud.]" Rashid, 654 F. App'x at 57. Accordingly, each of these statutes requires "proof of a fact which the other does not." Blockburger, 284 U.S. at 304. Namely, for aggravated identity theft, the government must prove that "the defendant knowingly transferred, possessed, or used a means of identification of another person[,]" Rashid, 654 F. App'x at 57, whereas § 1343 does not require such proof. Likewise, for wire fraud, the government must prove "specific intent to defraud[,]" Al Hedaithy, 392 F.3d at 590, whereas

§ 1028A does not require such proof.  Thus, wire fraud and aggravated identity theft are "distinct offenses."  Blockburger, 284 U.S. at 304.  Consequently, the wire fraud and aggravated identity theft charges are not multiplicitous because they are "multiple offenses [even though they] aris[e] in the course of a single act or transaction[.]"  Hodge, 870 F.3d at 194 (quoting Iannelli, 420 U.S. at 785 n.17).

Therefore, the Court must deny the defendant's motions asserting that the Indictment must be dismissed due to multiplicity.  See ECF No. 182; ECF No. 184; ECF No. 196; ECF No. 200; ECF No. 203.

In sum, because the Court has concluded that the defendant's challenges to the Indictment based on the alleged failure to include essential elements and alleged multiplicity both fail, the Court must deny all of the defendant's motions to dismiss.  See ECF No. 131; ECF No. 133; ECF No. 138; ECF No. 176; ECF No. 181; ECF No. 182; ECF No. 184; ECF No. 196; ECF No. 200; ECF No. 201; ECF No. 203; ECF No. 214; ECF No. 221.

## B.    Procedural Challenges (ECF Nos. 137, 138, 185, 186, 187, & 205)

The defendant has also filed motions challenging various pre-trial procedures, including (1) challenges to the grand jury proceedings in this case, see ECF No. 137; ECF No. 138; ECF No. 186; ECF No. 187; (2) challenges to the government's production of Brady and Jencks Act material, see ECF No. 185; and (3) a motion seeking the exclusion of certain evidence, see ECF No. 205.  For the following reasons, the Court concludes that it must (1) grant in part and deny in part the defendant's motions challenging the grand jury proceedings; (2) deny as moot in part and deny as premature in part the defendant's challenges to the government's production of Brady and Jencks Act material; and (3) deny in part and deny without prejudice in part the

defendant's motion in limine to exclude certain evidence.  The Court will address each category in turn.

### 1. Grand Jury Challenges (ECF Nos. 137, 138, 186, & 187)

The defendant raises three challenges to the grand jury that was empaneled in this case. First, the defendant argues "the method of selection [of the grand jurors] was unconstitutional on the grounds [that] jurors [we]re selected from a list of [potential] jurors [that] systematically excludes Black[ people] . . . and other minorities[.]"  ECF No. 137 at 1–2.  To demonstrate this alleged defect, the defendant seeks "the disclosure of [g]rand [j]ury [m]aterial[,]" including "transcripts of procedures of the hearing that took place[,]" ECF No. 186 at 1, as well as "all census reports, question[nai]res, transcripts, rules of eligibility of jurors, papers, documents[,] or other materials[ that] were used in the selection of the array of jurors[,] plus how each individual juror was selected[,]" ECF No. 137 at 1.  Second, the defendant argues that he "was never given any notice or notification of accusations or any possible charges, [or] given the oppor[]tunity to attend the grand jury hearing to defend himself of any accusations[,] which is his [Six]th Amendment right to face his accuser[.]"  ECF No. 138 at 2.  Third, the defendant argues that "the [government] [ ] misle[d] the grand jury into thinking it was getting first[]hand knowledge[ w]hen it was really hearsay" because "no one ever saw the defendant fill out or [submit] appl[ications] for [three] Range [R]overs online[.]"  Id. at 5; see also ECF No. 187 at 1. The Court will consider each of the defendant's arguments in turn.

### a. The Defendant's Motions Seeking Access to Grand Jury Materials to Challenge the Selection of the Grand Jurors (ECF Nos. 137 & 186)

First, the defendant argues that "the method of selection [of the grand jurors] was unconstitutional on the grounds [that] jurors [we]re selected from a list of [potential] jurors [that] systematically excludes Black[ people] . . . and other minorities[.]"  ECF No. 137 at 1–2.  In

order to demonstrate this alleged defect, the defendant seeks the production of "census reports, question[nai]res, transcripts, rules of eligibility of jurors, papers, documents[,] or other materials[ that] were used in the selection of the array of jurors[.]"  Id. at 1.

As the government correctly notes, see Gov't's 4th Opp'n at 4, pursuant to 28 U.S.C. § 1863(a), "[e]ach United States district court shall devise and place into operation a written plan for random selection of grand and petit jurors[,]" id. § 1863(a).  Pursuant to § 1867(a), a criminal defendant "may move to dismiss the indictment or stay the proceedings against him [or her] on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury."  Id. § 1867(a).  If such a motion includes

> a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title, the [defendant] shall be entitled to present in support of such motion the testimony of the jury commission or clerk, if available[;] any relevant records and papers not public or otherwise available used by the jury commissioner or clerk[;] and any other relevant evidence.

Id. § 1867(d).  Furthermore,

> [t]he contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except pursuant to the district court['s] plan or as may be necessary in the preparation or presentation of a motion . . . until after the master jury wheel has been emptied and refilled pursuant to [§] 1863(b)(4) of this title and all persons selected to serve as jurors before the master wheel was emptied have completed such service.

Id. § 1867(f).  And, pursuant to § 1868,

> [a]fter the master jury wheel is emptied and refilled pursuant to [§] 1863(b)(4) . . . , and after all persons selected to serve as jurors before the master wheel was emptied have completed such service, all records and papers compiled and maintained by the jury commission or clerk before the master wheel was emptied shall be preserved in the custody of the clerk for four years or for such longer period as may be ordered by a court, and shall be available for public inspection for the purpose of determining the validity of the selection of any jury.

Id. § 1868.

From April 1, 2009, though March 1, 2020,[5] this Court adhered to the Plan of the United States District Court for the Western District of Pennsylvania for the Random Selection of Grand and Petit Jurors.  See Plan of the United States District Court for the Western District of Pennsylvania for the Random Selection of Grand and Petit Jurors ("Plan") at 1 (Jan. 29, 2009), https://www.pawd.uscourts.gov/sites/pawd/files/AmendedJuryPlan09.pdf.  Pursuant to the plan, "[a]ll citizens shall have the opportunity to be considered for service on grand and petit juries in this Court[,]" id. § 1, and "[n]o citizen shall be excluded from service as a grand or petit juror on account of race, color, religion, sex, national origin[,] or economic status[,]" id. § 2.  In order to achieve "a fair cross[-]section of the community in each division of the Western District of Pennsylvania[,]" "names of grand and petit jurors selected to serve on or after the effective date of this [p]lan [are] selected at random from the voter registration lists of all the counties within the relevant divisions."  Id. § 5.  The "[p]lan's reference to random selection [ ] mean[s] a purely random selection of all names, or a selection where only the first selected name [is] chosen by a purely random method, with each subsequent name for that drawing chosen systematically at regular intervals through the remainder of the source list."  Id.  In any event, the

> selection process used must insure: [(]a) that names chosen will represent all segments of the source file from which drawn, [(]b) that the mathematical odds of any single name being picked are substantially equalized, and [(]c) that the possibility of human discretion or choice affecting the selection of any individual's name is eliminated.

Id.

---

[5] A revised plan was adopted by this Court on February 19, 2020, and made effective March 2, 2020.  See Plan of the United States District Court for the Western District of Pennsylvania for the Random Selection of Grand and Petit Jurors ("Revised Plan") at 1 (Mar. 2, 2020), https://www.pawd.uscourts.gov/sites/pawd/files/Jury_Plan_Final_2020.pdf.  However, because "[the defendant's] grand jury was empaneled in July 2019[,]" Gov't's 4th Opp'n at 12, the plan effective through March 1, 2020, governs the defendant's challenge to the method of selection of the grand jurors in this case.

The plan further provides that "[t]he contents of records or papers used by the Clerk in connection with the jury selection process shall not be disclosed except pursuant to this [p]lan or as may be necessary in the preparation or presentation of a motion challenging compliance with the selection procedures of th[is] . . . [p]lan." Id. § 15(b).  However, the "[n]ames of grand jurors shall not be disclosed except upon special order of the Court." Id. § 15(c).

Here, the defendant seeks "the disclosure of [g]rand [j]ury [m]aterial[,]" including "transcripts of procedures of the hearing that took place[,]" ECF No. 186 at 1, as well as "all census reports, question[nai]res, transcripts, rules of eligibility of jurors, papers, documents[,] or other materials[ that] were used in the selection of the array of jurors[,] plus how each individual juror was selected[,]" ECF No. 137 at 1.  The Court construes the defendant's request as seeking "records and papers" related to the "master jury wheel" under § 1868, see ECF No. 137 at 1 (requesting "census reports . . . , rules of eligibility of jurors, papers, documents[, and] other materials[ that] were used in the selection of the array of jurors"), as well as additional information related to "how each individual juror was selected[,]" such as "question[nai]res," id.

Beginning with the information related to the "master jury wheel[,]" the Court concludes that the defendant is entitled to "public inspection [of the records available pursuant to § 1868] for the purpose of determining the validity of the selection of [his grand] jury[.]"  28 U.S.C. § 1868.  The government represents that the defendant's "grand jury was empaneled in July 2019 and served through January 2021" and "[t]hus, it appears that the master wheel pertaining to his particular grand jury has now been emptied and refilled" and he "may [ ] seek inspection of records allowed under § 1868[.]"  Gov't's 4th Opp'n at 12.  Accordingly, pursuant to § 1868, the Clerk of the Court is obligated to have "preserved" the "records and papers compiled and maintained by the jury commission or clerk before the master wheel was emptied[,]" and must

make these records "available for public inspection for the purpose of determining the validity of the selection of [the grand] jury." 28 U.S.C. § 1868. The defendant, like any member of the public, see id., is entitled to inspect these records.

To the extent that the defendant seeks additional information beyond those "records and papers compiled and maintained" under § 1868, id., the Court concludes that he seeks relief pursuant to the discovery mechanism set forth in § 1867(f). Pursuant to § 1867(f), "[t]he contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed[] except" in certain enumerated circumstances, including "as may be necessary in the preparation or presentation of a motion" challenging the empanelment of a jury under § 1867(a). Id. § 1867(f). Although the defendant may "inspect jury lists[,]" Test v. United States, 420 U.S. 28, 30 (1975), his "right to inspect jury selection materials[,]" United States v. Rock, 21-cr-358 (CCW), 2022 WL 2317172, at *4 (W.D. Pa. June 28, 2022), is "not unlimited[,]" id. See United States v. Savage, Nos. 07-cr-550-03, 07-cr-550-04, 07-cr-550-05, 07-cr-550-06, 2012 WL 4616099, at *5 (E.D. Pa. Oct. 2, 2012) (highlighting concerns about juror safety and stating that § 1867(f) "is not a license for litigants to rummage at will through all jury-related records maintained by the Clerk of the Court" (internal quotation marks omitted)).

Here, the defendant represents that he intends to file a motion arguing that "the method of selection [of the grand jurors] was unconstitutional on the grounds [that] jurors [we]re selected from a list of [potential] jurors [that] systematically excludes Black[ people] . . . and other minorities[.]" ECF No. 137 at 1–2. Consequently, the "records [and] papers[,]" 28 U.S.C. § 1867(f), that the Court concludes are "necessary [to] the preparation [and] presentation of [the defendant's] motion[,]" id., constitute "statistical information regarding the composition of the grand jury[,]" Rock, 2022 WL 2317172 at *4. These records will "provide [the defendant] with

the relevant data to assess whether he has a valid claim under [§ 1867(a)] and the Sixth

Amendment[.]" <u>Savage</u>, 2012 WL 4616099, at *5.  On the other hand, "any marginal benefits of

disclosure [of the additional information sought by the defendant, such as individual juror

questionnaires,] would be greatly outweighed by the risks associated with dissemination of [the]

personal information contained on those questionnaires and by the burden on the Clerk of [the]

Court in providing (and presumably supervising) [the] defendant's access to the confidential

questionnaires."  <u>Id.</u> (internal quotation marks and alterations omitted).  Accordingly, the Court

cannot envision any reason—and the defendant presents no argument—why he should be

permitted to view records containing personal identifying information, such as juror

questionnaires.  <u>See generally</u> ECF No. 137; ECF No. 186.   The Court will therefore grant the

defendant's motions seeking access to grand jury materials to the extent that they seek the

opportunity "to inspect, reproduce, and copy[,]" 28 U.S.C. § 1867(f), statistical information

regarding the composition of the grand jury, and deny the defendant's motions to the extent they

seek additional relief.[6]  <u>See</u> ECF No. 137; ECF No. 186.

> **b.    The Defendant's Sixth Amendment Motion Challenging the Grand Jury Proceedings (ECF No. 138)**

Second, the defendant moves to dismiss the Indictment based upon his allegation that he

"was never given any notice or notification of accusations or any possible charges, [or] given the

oppor[]tunity to attend the grand jury hearing to defend himself of any accusations[], which is his

[Six]th Amendment right to face his accuser[.]"  ECF No. 138 at 2.  As the government correctly

notes, <u>see</u> Gov't's 3d Opp'n at 14, Federal Rule of Criminal Procedure 6(d)(1) states that only

---

[6] The defendant argues that "the government maintain[]s that the [i]nformation for the grand [j]urors is [a]vail[a]ble at the [C]lerk of [the C]ourt['s] office[, but that] when [he] had counsel this issue was never addressed, and now that [he has] been in prison [for] [fifteen] months[, he has] no way to access that information[.]"  ECF No. 201 at 4. However, the defendant is no longer incarcerated and thus may access the information at the office of the Clerk of the Court, like any member of the public.

"[t]he following persons may be present while the grand jury is in session[, namely,] attorneys for the government, the witness being questioned, interpreters when needed, and a court reporter or an operator of a recording device[,]" Fed. R. Crim. P. 6(d)(1).  See United States v. Wright, Nos. 05-cr-619-1, 12-cv-1539, 2013 WL 5707876, at *3 (E.D. Pa. Oct. 18, 2013) ("Federal Rule of Criminal Procedure 6(d) lists the only people who may be present during Grand Jury proceedings, and it does not include the defendant.").  Moreover, "the right to confrontation [under the Sixth Amendment] is a trial right[,]" Pennsylvania v. Ritchie, 480 U.S. 39, 52 (1987) (emphasis in original), and thus does not afford a criminal defendant the right to be present during grand jury proceedings.  Accordingly, the Court will deny the defendant's motion challenging his absence from the grand jury proceedings under the Sixth Amendment.  See ECF No. 138.

> **c.      The Defendant's Motion Challenging the Indictment Because the Government Misled the Grand Jury and Relied on Hearsay (ECF Nos. 138, 186, & 187)**

Third, the defendant moves to dismiss the Indictment because "the [government] [ ] misle[d] the grand jury into thinking it was getting first[]hand knowledge[ w]hen it was really hearsay" because "no one ever saw the defendant fill out or apply for [three] Range Rovers online[.]"  ECF No. 138 at 5.  However, as the government correctly notes, see Gov't's 3d Opp'n at 14, "[i]t is permissible for an indictment to be based on hearsay[,]" United States v. Wander, 601 F.2d 1251, 1260 (3d Cir. 1979).  Accordingly, the Court will deny the defendant's motions to dismiss the Indictment based upon the grand jury's reliance on hearsay evidence.  See ECF No. 138; ECF No. 186; ECF No. 187.

Thus, as to the defendant's grand jury challenges, the Court grants the defendant's motions seeking access to jury records to the extent that they seek the inspection of statistical

information under § 1867(f), see ECF No. 137; ECF No. 186, and denies the defendant's

motions challenging the Indictment because he was not present at the grand jury proceedings and

the grand jury allegedly relied on hearsay, see ECF No. 138; ECF No. 186; ECF No. 187.

**2.   Requests for Production of Brady & Jencks Act Material (ECF No. 185)**

The defendant also "requests [Brady and] Jen[c]ks Act [m]aterial from the

[g]overnment[,]" including "reports certified, [n]otes[, e]xculpatory [e]vidence, witness

statements[,] police reports, [c]ompany reports [c]ertified, court reports, [i]mpeachment

[m]aterials, [i]nterv[ie]wed person[s], [and] I[nternet ]S[ervice ][] Provider reports[.]"  ECF

No. 185 at 1.  In response, the government argues that, "under Rule 26.2 of the Federal Rules of

Criminal Procedure and 18 U.S.C. § 3500, witness statements need not be produced until after a

witness has testified on direct examination[,]" Gov't's 4th Opp'n at 19, but "many materials

subject to the Jencks Act have already been produced[,]" id. at 20.

In its Pre-Trial Scheduling Order, the Court reminded the government that "it has an

ongoing obligation to produce forthwith to the defendant any Brady/Giglio evidence the

government becomes aware of" and directed the government to "produce to the defendant any

Jencks Act material sufficiently in advance of [a] witness's cross-examination so as not to cause

delay."  Pre-Trial Scheduling Order at 2–3 (Apr. 27, 2023).  In his motion, the defendant does

not make any allegations that Brady material exists and has not been produced to him.  See

generally ECF No. 185.  The defendant also does not offer any reason to conclude that the

Court's previous admonition to the government that Jencks Act material be produced

"sufficiently in advance of [a] witness's cross-examination so as not to cause delay[,]" Pre-Trial

Scheduling Order at 2–3 (Apr. 27, 2023), is insufficient to ensure the defendant's ability to

adequately challenge the evidence presented against him at his trial.  See generally ECF No. 185.

Accordingly, the Court will deny the defendant's motion as moot as to his Brady request, as he

has already received the relief that he requests, and the Court will deny the motion as premature as to his Jencks Act request.

### 3. Motion <u>in Limine</u> (ECF No. 205)

The defendant also moves for the exclusion of (1) "[a]ny [e]vidence [that] the [g]overnment may seek to [a]dmit [u]nder Federal Rule of Evidence 404(b)[,]" ECF No. 205 at 1; (2) "the [three] applications that were [a]llegedly submitted [b]y [the defendant,]" <u>id.</u>; (3) "any [u]ncharged conduct and video or photo[]s[,]" <u>id.</u>; (4) "any [h]earsay [s]tatements that are[ ]n[o]t based upon actual proof and facts, of eye[]witness accounts of first[]hand knowledge[,]" <u>id.</u> at 1–2; and (5) the "[a]uthentication by computer time stamp [of] a [m]ech[a]nical [t]race[,]" <u>id.</u> at 2.

"A motion <u>in limine</u> is a pretrial motion which requests that the Court prohibit opposing counsel from referring to or offering evidence on matters prejudicial to the moving party." <u>Laufen Intern., Inc. v. Larry J. Lint Floor & Wall Covering, Co., Inc.</u>, No. 10-cv-199, 2012 WL 1458209, at *1 (W.D. Pa. Apr. 27, 2012) (underline added). It "is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." <u>Bradley v. Pittsburgh Bd. of Educ.</u>, 913 F.2d 1064, 1069 (3d Cir. 1990). "[A] court is limited to excluding, <u>in limine</u>, only such evidence that is clearly inadmissible on all possible grounds[,]" <u>Diehl v. Blaw-Knox</u>, No. 01-cv-0770, 2002 WL 34371510, at *1 (M.D. Pa. July 15, 2002) (internal quotation marks omitted), and "[e]videntiary rulings, especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context[,]" <u>Leonard v. Stemtech Health Scis., Inc.</u>, 981 F. Supp. 2d 273, 276 (D. Del. 2013).

The Court will first consider the defendant's motion to exclude Rule 404(b) evidence, before addressing the four other categories of evidence that the defendant seeks to exclude.

### a. Exclusion of Rule 404(b) Evidence

First, the defendant requests that the Court "[e]xclud[e a]ny [e]vidence [that] the [g]overnment may seek to [a]dmit [u]nder Federal Rule of Evidence 404(b) on the ground that it has provided no notice of the [e]vidence [or] . . . the basis for admission of such [e]vidence." ECF No. 205 at 1; see also ECF No. 206 at 2 (arguing that "the government has failed to provide a written notice of the particular [e]vidence[] [ ] it seeks to admit under Rule 404[](b) [or the] evidentiary purpose under which it seeks to admit the evidence"). In response, the government argues that exclusion "is unwarranted" because "[t]he timing of 404(b) disclosures will likely be addressed in the Court's pretrial order[,]" and "a prior opinion in this matter has already held that disclosures three weeks prior to trial would be appropriate." Gov't's 5th Opp'n at 2.

As the government correctly notes, see id., Judge Ambrose's October 14, 2020 Memorandum Order directed the government "to produce any and all responsive material to the[ defendant's] request[ for disclosure of evidence pursuant to Rule 404(b)] three weeks prior to trial." Memorandum Order of Court at 2 (Oct. 14, 2020), ECF No. 89. Unaware at the time of Judge Ambrose's Order, on April 27, 2023, the Court scheduled trial for September 5, 2023, and issued its Pre-Trial Scheduling Order, which directs that

> the government shall provide the defendant with notice of any evidence of other crimes it intends to use during the trial of this case pursuant to [ ] Rule . . . 404(b) or evidence of prior convictions it intends to use for impeachment purposes, if the defendant decides to testify, on or before June 1, 2023, and any opposition to such notices shall be provided to the government on or before June 19, 2023.

Pre-Trial Scheduling Order at 2 (Apr. 27, 2023). Prior to April 27, 2023—when the Court scheduled trial for September 5, 2023—a trial date had never been set in this case.

Accordingly, when the defendant filed this motion on January 24, 2023, see ECF No. 205 at 1, the deadline set by Judge Ambrose for the production of Rule 404(b) material—"three

weeks prior to trial[,]" Memorandum Order of Court at 2 (Oct 14, 2020), ECF No. 89—had not

passed.  Moreover, following issuance of this Court's Pre-Trial Scheduling Order on April 27,

2023, which superseded any pre-trial deadlines previously set by the Court, the pertinent

deadline for the government to provide the defendant with "notice of any evidence of other

crimes it intends to use during the trial of this case pursuant to [ ] Rule . . . 404(b)[,]" Pre-Trial

Scheduling Order at 2 (Apr. 27, 2023), was June 19, 2023, see id.  The defendant's motion

provides no allegations to suggest that the government did not comply with this deadline.  See

generally ECF No. 205.  Accordingly, because there is no evidence before the Court that the

government intends to use and has failed to provide the defendant with notice of such evidence

under Rule 404(b), the Court will deny the defendant's motion to exclude such evidence.[7]

**b.  Exclusion of the Three Credit Applications Allegedly Submitted by the Defendant; Uncharged Conduct and Video or Photo; Hearsay Statements; and the Authentication by Computer Time Stamp of a Mechanical Trace**

Second, the defendant requests that the Court exclude "the [three] applications that were

[a]llegedly submitted [b]y [the defendant,]" ECF No. 205 at 1, because of "[t]he [a]uthenticity of

these applications and lack thereof when there is no proof of who submitted these

applications[,]" ECF No. 206 at 2.  The defendant also requests that the Court exclude "any

[u]ncharged conduct and video or photo[]s[,]" ECF No. 205 at 1; "any [h]earsay [s]tatements that

are[ ]n[o]t based upon actual proof and facts, of eye[]witness accounts of first[]hand

[k]nowledge[,]" id. at 1–2; and the "[a]uthentication by computer time stamp [of] a

---

[7] At the July 27, 2023 evidentiary hearing, approximately six months after the defendant's motion to exclude Rule 404(b) evidence was filed, the government indicated its intent to file a motion in limine concerning Rule 404(b) evidence.  And, on August 8, 2023, the government filed such motion.  See Government's Motion in Limine to Admit Evidence Pursuant to Federal Rules of Evidence 404 and 609 at 1, ECF No. 260.  Because the defendant subsequently indicated his intent to plead guilty, see Consent Motion to Hold Trial and Filing Deadlines in Abeyance ¶ 2, ECF No. 262, there likely will be no need for the Court to resolve the government's motion.  However, in the event that this case ultimately proceeds to trial, the Court will address whether the government complied with the notice requirement set by the Court in its Pre-Trial Scheduling Order, see Pre-Trial Scheduling Order at 2 (Apr. 27, 2023), as well as the merits of the government's motion in limine.

[m]ech[a]nical [t]race[,]" id. at 2. It is not entirely clear from the defendant's motion and memorandum, see generally ECF No. 205; ECF No. 206, whether the "[u]ncharged conduct[,] [ ] video[,] or photo[]s[,]" "[h]earsay [s]tatements[,]" and "[a]uthentication by computer time stamp[,]" id. at 1–2, that he references are related to the credit applications. See, e.g., ECF No. 206 at 4–5 ("Since ever[y] application was submitted electronic[al]ly[,] this hearsay rule would apply."). In response, the government, citing Federal Rule of Evidence 901(a), argues that "[t]he government's evidence should not be excluded without an opportunity to authenticate it, pursuant to witness testimony [or] other means, at trial." Gov't's 5th Opp'n at 2.

As the government correctly notes, see id., Federal Rule of Evidence 901(a) states that, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). A proponent may "satisf[y] th[is] requirement[,]" Fed. R. Evid. 901(b), through a number of methods, including "testimony of a witness with knowledge[,]" Fed. R. Evid. 901(b)(1), and the other examples provided in Federal Rule of Evidence 901(b), see Fed. R. Evid. 901(b)(2)–(10) (listing nine other examples of evidence that satisfies the Rule 901(a) requirement). The Court agrees with the government that it is premature at this stage of the case to exclude its evidence, as the government has not had the opportunity to present any "evidence [ ] to support a finding that [any] item [of evidence] is what the [government] claims it is." Fed. R. Evid. 901(a).

Moreover, after the defendant filed this motion on January 24, 2023, see ECF No. 205 at 1, he requested the assistance of counsel during trial, see Pre-Trial Scheduling Order at 2 n.1 (Apr. 27, 2023). Accordingly, because both the defendant's arguments concerning authentication, as well as his other arguments set forth in this motion, are evidentiary trial

objections most appropriately made at trial by his attorney, the Court will deny without prejudice the defendant's motion to exclude the credit applications, "[u]ncharged conduct and video or photo[]s[,]" ECF No. 205 at 1; "[h]earsay [s]tatements[,]" id.; and the "[a]uthentication by computer time stamp [of] a [m]ech[a]nical [t]race[,]" id. at 2. If defense counsel deems it appropriate to do so, he may object on the defendant's behalf to the introduction of such evidence prior to or during the trial.

**C.**     **Fourth Amendment Challenges (ECF Nos. 177 & 178)**

The defendant challenges the constitutionality of the "tracking G[PS] warrant issued [on October 25, 2019,] upon two vehicles, found in pos[s]ession of a James Pennix at 609 Frane St[reet,] Pitt[s]burgh[,] P[ennsylvani]a." ECF No. 177 at 1; see also ECF No. 178 at 1 (seeking the "suppression of all info[r]mation obtained due to the illegal tracking warrant issued on James Pennix['s] vehicles" (capitalization omitted)). Citing United States v. Jones, 565 U.S. 400 (2012), the defendant argues that the affidavit in support of the warrant is "illegal" because it "stated that the detective saw [t]he [defendant] . . . on [F]rane [S]t[reet] on September 25, 2019[,]" but this "was [i]mpossible" because the defendant "was not in Pennsylvania [ ] at that time" and had "never resided on [F]rane [S]t[reet] or vis[i]ted [F]rane [S]t[reet] in over a year before that [d]ate." ECF No. 177 at 1. The defendant "request[s] a hearing on the [m]atters at [h]and." ECF No. 178 at 2. In response, the government argues that (1) the defendant "lacks a reasonable expectation of privacy in the vehicles, such that his motion should be denied for lack of standing[,]" Gov't's 4th Opp'n at 8 n.3, and (2) "the affidavit in support of the GPS tracking warrants was supported by probable cause" and thus "there is no basis to suppress any evidence derived from them[,]" id. at 8. For the following reasons, the Court concludes that the defendant's motions pursuant to the Fourth Amendment must be denied.

Pursuant to the Fourth Amendment to the United States Constitution,

[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  "The Fourth Amendment prohibits the intentional or reckless inclusion of a material false statement (or omission of material information) in a search-warrant affidavit." United States v. Pavulak, 700 F.3d 651, 665 (3d Cir. 2012).  Pursuant to the Supreme Court's decision in Franks v. Delaware, 438 U.S. 154 (1978), "a criminal defendant has the right to challenge the truthfulness of factual statements made in an affidavit of probable cause supporting a warrant subsequent to the ex parte issuance of the warrant."  United States v. Yusuf, 461 F.3d 374, 383 (3d Cir. 2006) (underline added).

"Under the exclusionary rule, 'evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure.'" United States v. Lara-Mejia, 482 F. Supp. 3d 281, 293 (M.D. Pa. 2020) (quoting United States v. Calandra, 414 U.S. 338, 347 (1974)).  "This prohibition also applies 'to the fruits of the illegally seized evidence.'"  Id. (quoting Calandra, 414 U.S. at 347).  "The rule operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'"  Id. (quoting Calandra, 414 U.S. at 348).  However, exclusion does not necessarily follow every Fourth Amendment violation; rather, the exclusionary rule is applied in limited circumstances, i.e., "those 'unusual cases[,]'" United States v. Katzin, 769 F.3d 163, 170 (3d Cir. 2014) (quoting United States v. Leon, 468 U.S. 897, 918 (1984)), where it may "appreciably deter governmental violations of the Fourth Amendment[,]" id.  In deciding the rule's applicability, courts weigh "the deterrent value

of suppression" against the "social costs of exclusion," including "omitting reliable, trustworthy evidence of a defendant's guilt[.]"  Id. at 171 (internal quotation marks omitted).  Additionally, "[a] defendant must have standing to invoke the Fourth Amendment's exclusionary rule."  United States v. Correa, 653 F.3d 187, 190 (3d Cir. 2011).  Specifically, "[a]n individual challenging a search has the burden of establishing that he [or she] had a reasonable expectation of privacy in the property searched[.]"  United States v. Burnett, 773 F.3d 122, 131 (3d Cir. 2014).  "[A] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his [or her] Fourth Amendment rights infringed."  Id. at 131–32 (internal quotation marks omitted).

Here, the defendant has not met his "burden of establishing that he had a reasonable expectation of privacy in the property searched."  Id. at 131.  The defendant challenges the warrant issued to track "two vehicles[] found in pos[s]ession of a James Pennix[,]" ECF No. 177 at 1, which were allegedly "the same [m]odel and year of the [v]ehicles [a]pplied for on the [three credit a]pplications [allegedly submitted by the defendant,]" id. at 3.  However, the defendant further states that he "had no involvement with these application[s ]or vehicle[s]."  Id.; see also ECF No. 180 at 1 (asserting that the defendant "was never found in possession of [anything]").  If the defendant "had no involvement with these application[s ]or vehicle[s,]" ECF No. 177 at 3, then he has no "reasonable expectation of privacy in the property searched[,]" Burnett, 773 F.3d at 131, as an individual "has no standing to challenge [the] search of [a] car" "that he [or she] neither owns nor leases[,]" id. (internal quotation marks omitted).  See United States v. Owens, 187 F. Supp. 3d 488, 494 (M.D. Pa. 2016) (concluding that, because "[a third party] was the owner and operator of the vehicle searched[,]" "[the defendant] simply does not

have standing to challenge the search of [the third party]'s vehicle" since, "[i]f the search was illegal, it was [the third party]'s Fourth Amendment rights that were infringed").  Accordingly, the Court concludes that the defendant has not demonstrated "a reasonable expectation of privacy[,]" Burnett, 773 F.3d at 131, in the vehicles that are the subject of his motions, and therefore the Court must deny his Fourth Amendment motions, see ECF No. 177; ECF No. 178.

**D.      Jurisdictional Challenges (ECF Nos. 175, 179, 189, 201, & 224)**

The defendant moves to dismiss this case for lack of subject-matter and personal jurisdiction.  Under Federal Rule of Criminal Procedure 12(b), criminal defendants may bring "motion[s asserting] that the court lacks jurisdiction . . . at any time while the case is pending." Fed. R. Crim. P. 12(b)(2).  The Court will address each of the defendant's jurisdictional challenges in turn.

**1.   Subject-Matter Jurisdiction (ECF Nos. 175, 201, & 224)**

The defendant moves to dismiss this case for lack of subject-matter jurisdiction, arguing that (1) "this [C]ourt has never [p]roven [s]ubject[-]matter [j]urisdiction on the record and the law requires [proof] of [j]urisdiction to appear on the record of the [C]ourt once challenged[,]" ECF No. 201 at 1; (2) "there is no real party of injury in th[is] [ ] case[,]" ECF No. 224 at 1–2, because "L.W[.] Automotive . . . has not be[en] injured[,]" id. at 2, as "the applications w[]ere not approved[,]" id.; and (3) "[t]here is no corpus delecti[,]" id. at 5 (emphasis omitted).  In response, the government argues that, "as one of the previously assigned [d]istrict [j]udges has already concluded, this Court has valid . . . subject-matter jurisdiction over [the defendant] and this case" and the defendant's "newest filings provide no persuasive reason to revisit that conclusion."  Gov't's 6th Opp'n at 1; see also Gov't's 4th Opp'n at 4 ("There is already an opinion in this case concluding that the Court has both subject-matter jurisdiction over the case and personal jurisdiction over [the defendant].").

"Subject-matter jurisdiction defines the court's authority to hear a given type of case,"

United States v. Morton, 467 U.S. 822, 828 (1984), and "represents 'the extent to which a court

can rule on the conduct of persons or the status of things,'" Carlsbad Tech., Inc. v. HIF Bio, Inc.,

556 U.S. 635, 639 (2009) (quoting Black's Law Dictionary 870 (8th ed. 2004)).  "[B]ecause

[subject-matter jurisdiction] involves a court's power to hear a case, [it] can never be forfeited or

waived[,]" United States v. Cotton, 535 U.S. 625, 630 (2002), and "courts . . . have an

independent obligation to determine whether subject-matter jurisdiction exists, even in the

absence of a challenge from any party[,]" Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006).

For the following reasons, the Court concludes that it must deny the defendant's motions

challenging the Court's subject-matter jurisdiction.

First, as the government correctly notes, see Gov't's 4th Opp'n at 4; Gov't's 6th Opp'n

at 1, Judge Ambrose has already concluded that this Court has jurisdiction over this case in her

November 4, 2021 Memorandum Order of Court, see Memorandum Order of Court at 1–2

(Nov. 4, 2021), ECF No. 126.  Specifically, Judge Ambrose ruled:

> [F]ederal district courts have "original jurisdiction, exclusive of the courts of the
> States, of all offenses against the laws of the United States." 18 U.S.C. § 3231;
> see also U.S. Const. art. III, § 2 (specifying that the "judicial Power shall extend
> to all Cases . . . arising under . . . the Laws of the United States[")]).  Because the
> Indictment in this case charges [the d]efendant with offenses against laws of the
> United States, this Court has subject-matter jurisdiction.

Id.  Accordingly, contrary to the defendant's argument that "this [C]ourt has never [p]roven

[s]ubject[-]matter [j]urisdiction on the record[,]" ECF No. 201 at 1, another former member of

this Court has already established that it "has subject-matter jurisdiction" in this case,

Memorandum Order of Court at 1–2 (Nov. 4, 2021), ECF No. 126.  See United States v. Wecht,

619 F. Supp. 2d 213, 222 (W.D. Pa. 2009) (stating that although "[t]he law-of-the-

case doctrine does not limit the jurisdictional power of trial judges to reconsider issues

previously decided by a predecessor judge from the same court, [ ] it does recognize, as a matter of comity, that a successor judge should not lightly overturn the decision of his predecessor in a given case" (citing Fagan v. City of Vineland, 22 F.3d 1283, 1290 (3d Cir. 1994)).  And, the defendant has provided no reason to overrule Judge Ambrose's ruling.

Moreover, to the extent that the defendant now raises new arguments that (1) "there is no real party of injury in th[is] [ ] case[,]" ECF No. 224 at 1–2, because "L.W[.] Automotive . . . has not be[en] injured[,]" id. at 2, as "the applications w[]ere not approved[,]" id.; and (2) "[t]here is no corpus delecti[,]" id. at 5 (emphasis omitted), neither of these arguments undermine the Court's jurisdiction.  As Judge Ambrose noted, see Memorandum Order of Court at 1 (Nov. 4, 2021), ECF No. 126, this Court, like all federal district courts, has "original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States[,]" 18 U.S.C. § 3231.  Because the defendant is charged with violations of "the laws of the United States[,]" id., namely, 18 U.S.C. §§ 1343 and 1028A, this Court thus has subject-matter jurisdiction over this case.  See United States v. Johnson, 270 F. App'x 191, 192 (3d Cir. 2008) ("[W]here an indictment charges a defendant with violating the laws of the United States, [18 U.S.C. §] 3231 provides the district court with subject[-]matter jurisdiction[.]").  Whether L.W. Automotive, as the entity to whom the defendant allegedly submitted the fraudulent credit application, suffered any injury is irrelevant to the issue of this Court's subject-matter jurisdiction.  Similarly, the "corpus delecti" rule, ECF No. 224 at 5, an evidentiary rule that "'seeks to ensure that the [prosecution] has established the occurrence of a crime before introducing the statements or confessions of the accused to demonstrate that the accused committed the crime[,]'" Housley v. Tennis, No. 04-cv-658, 2004 WL 759649, at *3 (E.D. Pa.

Apr. 5, 2004) (quoting <u>Commonwealth v. Taylor</u>, 831 A.2d 587, 590 (Pa. 2003)), does not

impact the Court's jurisdiction.

Accordingly, the Court concludes that it has subject-matter jurisdiction over this case and

must therefore deny the defendant's motions to dismiss this case for lack of subject-matter

jurisdiction.  <u>See</u> ECF No. 175; ECF No. 201; ECF No. 224.

### 2.  **Personal Jurisdiction (ECF Nos. 175, 179, & 189)**

The defendant also moves to dismiss this case for lack of personal jurisdiction, raising a

number of predominantly nonsensical arguments that appear to pertain to his "sovereign citizen"

beliefs.  <u>See</u> ECF No. 189 at 4 (arguing that the defendant is "not a [c]itizen of the corporate

U[nited] S[tates] subject to its [j]urisdiction" but rather "a [n]atural[-]born flesh and blood

private [s]overeign of the [o]rganic [de j]ure [f]ifty states of the Contine[n]t[]al United [S]tates

[o]f America, over which the [s]overeignty of the [i]ncorporated U[nited] S[tates] does not

[e]xtend"); ECF No. 175 at 2 (advancing similar arguments); ECF No. 179 at 2 (advancing

similar arguments).

As an initial matter, the Court notes that Judge Ambrose has already concluded that the

Court has personal jurisdiction over the defendant.  Specifically, in her November 4, 2021

Memorandum Order of Court, Judge Ambrose stated:

> To the extent [that the d]efendant also asserts a lack of personal jurisdiction, that
> argument likewise fails.  As I have explained, "[i]n a federal criminal prosecution,
> personal jurisdiction is supplied by the fact that the defendant is within United
> States territory.  The court has personal jurisdiction over a criminal defendant
> when he appears before the court, whether voluntarily or involuntarily." <u>United
> States v. El</u>, No. Crim. 10-19-2, 2012 WL 1609910, at *2 (W.D. Pa. May 7, 2012)
> (Ambrose, J.), <u>aff'd sub nom.</u> <u>United States v. Laprade</u>, 511 F. App'x 181 (3d Cir.
> 2013) (internal quotations and citation omitted); <u>see also</u> <u>Sinclair v. Att'y Gen. of
> U.S.</u>, 198 F. App'x 218, 222 (3d Cir. 2006) (citing cases).  Because [the
> d]efendant is located within United States territory and has appeared before this
> Court, the Court has personal jurisdiction over him.

Memorandum Order of Court at 2 (Nov. 4, 2021), ECF No. 126.  Moreover, as other courts have concluded, "[t]hese [sovereign citizen] arguments are patently frivolous."  Wright v. Thompson, No. 23-cv-589, 2023 WL 3372397, at *1 (M.D. Pa. Apr. 11, 2023); see also Brown v. Fewell, No. 22-cv-364, 2022 WL 14140957, at *3 (W.D. Pa. Mar. 25, 2022) (concluding that the "'sovereign citizen' jurisdictional theory amounts to nothing more than spurious arguments that are patently frivolous").  Consequently, and in light of Judge Ambrose's reasoned decision concluding that this Court has personal jurisdiction over the defendant, see Memorandum Order of Court at 2 (Nov. 4, 2021), ECF. No. 126, the Court must deny the defendant's motions to dismiss this case for lack of personal jurisdiction, see ECF No. 175; ECF No. 179; ECF No. 189. See Wecht, 619 F. Supp. 2d at 222 (explaining that "a matter previously ruled upon [by a predecessor judge] should be revisited only in extraordinary circumstances, as where, e.g., [(]1) the predecessor judge is unavailable; [(]2) new evidence becomes available; [(]3) a supervening new law has been announced; or [(]4) the earlier decision was clearly erroneous and would create manifest injustice" (internal quotation marks omitted)).

Accordingly, because the Court has concluded that the defendant's challenges to the Court's subject-matter jurisdiction and personal jurisdiction lack merit, the Court must deny all of the defendant's motions asserting jurisdictional challenges.  See ECF No. 175; ECF No. 179; ECF No. 189; ECF No. 201; ECF No. 224.

## E.      Challenges to Release Conditions (ECF Nos. 215, 216, 218, & 223)

The defendant moves for a modification of his conditions of pretrial release, arguing that the conditions violate the Fourth, Fifth, Eighth, Thirteenth, and Fourteenth Amendments.[8]  See

---

[8] The defendant also refers in passing to the Ninth Amendment.  See, e.g., ECF No. 215 at 2 ("The government['s] proposed conditions of release are excessive and violate the constitutional rights that everyone shall enjoy under the . . . [Nin]th [ ] Amendment.").  However, the Ninth Amendment, which states that "[t]he enumeration in the

(continued . . .)

ECF No. 215 at 1–2.  Specifically, the defendant argues that (1) "by having [his] internet [m]onitored, that is a [Four]th Amendment [v]iolation of [p]rivacy[,]" ECF No. 218 at 1; (2) he "never had any opportunity to [o]bject to the proposed action before a fair and [n]eutral [d]ecision [m]aker[, a]gain [v]iolating" his procedural due process rights, id.; (3) the "monitoring [of his] internet" and the "ankle monitoring" "[v]iolat[es his] . . . [s]ubstantive [d]ue process of privacy[,]" id.; (4) "this was racial [d]iscrimination to put these [u]nconstitutional [conditions] []on [him,]" id. at 2; (5) "hav[ing] this ankle monitor on [his] leg 24/7 as if [he] was an animal . . . is a[n Eighth] Amendment violation[,]" ECF No. 223 at 1–2; and (6) "[d]ue to the racial climate of this country, [him] being a person of color and treating [him] as if [he] was a [s]lave[,]" the conditions of release are a "[v]iolation of the [Thirteen]th Amendment[,]" ECF No. 218 at 3.  In response, the government states that it "consents to the lifting of the condition that requires monitoring of [the defendant's] electronic devices[,]" but "maintains [ ] that [the defendant's] curfew and [location] monitoring conditions, which currently only require that he be home from 10[:00] p.m. to 5[:00] a.m., are a reasonable measure to secure the appearance at trial of an individual who has previously failed to appear for court and used forged records to try and excuse that non-appearance."  Gov't's 6th Opp'n at 3.  Furthermore, the government argues that "the conditions on [the defendant's] employment are a reasonable measure to protect the public from a defendant with a well-documented history of fraud, forgery, and identity theft." Id.  The government provides no response to the defendant's constitutional arguments.  See generally id.

---

(. . . continued)

Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people[,]" U.S. Const. amend. IX, "does not independently provide a source of individual constitutional rights[,]" Clayworth v. Luzerne Cnty., Pa., 513 F. App'x 134, 137 (3d Cir. 2013).  Accordingly, the Court must deny the defendant's motions to the extent that they are based on the Ninth Amendment.

The Court will first address whether the defendant's conditions of release should be further modified pursuant to 18 U.S.C. § 3142, before turning to the defendant's constitutional arguments.

### 1.   18 U.S.C. § 3142

The Bail Reform Act, 18 U.S.C. § 3141 et seq., "created a comprehensive set of statutory guidelines governing release and detention decisions for criminal cases in federal court."  United States v. Maldonado, 454 F. Supp. 3d 443, 447 (M.D. Pa. 2020).  "The fundamental precept of the Bail Reform Act mandates the release of individuals so long as the court can be reasonably assured [that] the defendant does not pose a flight risk or danger to the community."  Id. at 448 (internal quotation marks omitted) (citing 18 U.S.C. § 3142).  If, after a detention hearing,

> the judicial officer determines that [unconditional] release . . . will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, such judicial officer shall order the pretrial release of the person . . . subject to the least restrictive [ ] condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]

18 U.S.C. § 3142(c)(1)(B).  Once an order setting forth conditions of release, see id. § 3142(h), is issued, the Court may still reopen a defendant's detention hearing

> at any time before trial if the [Court] finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue [of] whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community[,]

id. § 3142(f)(2).

Here, the defendant seeks a modification of his conditions of pretrial release on the basis that, "[i]n 3.4 years[,] there has never been a hear[ing] missed" and, "even while in state prison[, he] attended every hearing[,]" ECF No. 223 at 1, and that he is "[a] peaceful person with no violence in [his] record ever[,]" id. at 2 (capitalization omitted).

As an initial matter, in light of the government's consent to the lifting of the electronic monitoring condition, see Gov't's 6th Opp'n at 3, the Court concludes that this condition is no longer necessary to "assure the appearance of the [defendant] as required or . . . the safety of any other person or the community," 18 U.S.C. § 3142(c)(1).  Accordingly, the Court will modify the defendant's conditions of release to remove the monitoring of his electronic devices.

However, as to the defendant's request that the location monitoring and curfew be removed, see ECF No. 223 at 1, although the defendant's record of appearing before the Court in this case and his lack of violence during the past three years is "information [ ] that was not known . . . at the time of the [detention] hearing[,]" 18 U.S.C. § 3142(f)(2), the Court nonetheless concludes that this information does not merit the modification of the defendant's pretrial release conditions.[9]  Prior to the defendant's detention hearing in this case, the government provided Judge Lenihan—the Magistrate Judge who conducted the defendant's detention hearing—with records indicating that, "[a]t the time of his conduct in this federal case," the defendant had failed to appear for a "sentencing in a theft and fraud case pending in the Alleghany County Court of Common Pleas."  Brief in Support of Detention Request ("Gov't's Bond Submission") ¶ 2, ECF No. 54.  According to the government's submission, that "[c]ourt issued a nationwide warrant[,]" id., but the defendant "was not apprehended on the warrant, and did not turn himself in[,]" id. ¶ 3.  "Instead, on July 30, [2019,] the attorney representing him in the Court of Common Pleas provided a set of medical records . . . to the

---

[9] The Court notes that the defendant's alleged lack of history of violence is not necessarily "information [ ] that was not known to [Judge Lenihan—the Magistrate Judge who conducted the defendant's detention hearing—] at the time of the [detention] hearing" in this case.  18 U.S.C. § 3142(f)(2).  However, as (1) the defendant's lack of any known violence during the three years that have passed since his detention hearing before Judge Lenihan in July 2020, see Min. Entry (July 13, 2020), ECF No. 56, is "information [ ] that was not known to [him] at the time of the [detention] hearing[,]" 18 U.S.C. § 3142(f)(2), and (2) the Court ultimately concludes that a modification of the defendant's conditions of pretrial release—aside from the removal of electronic monitoring, to which the government has agreed—is unwarranted, the Court assumes without deciding that the defendant's lack of violence is an argument that merits reconsideration of the conditions of his pretrial release under § 3142(f)(2).

[prosecution[,]" id., which "appear[ed] to show that [the defendant] had been admitted to Methodist Hospital in Merrillville, Indiana, . . . the night before his scheduled sentencing . . . and that he was discharged . . . a day after the warrant had been issued for his arrest[,]" id. ¶ 4. However, "[t]hese records appear[ed] to have been doctored" as "[i]nvestigators later reached out to Methodist Hospitals . . . to corroborate [the defendant's] story" and received records that "make clear that [the defendant] was discharged on [the same day as the sentencing]—before the warrant was issued[.]" Id. ¶ 5. Moreover, after the defendant "was indicted by the grand jury in the Western District of Pennsylvania on September 25, 2019, and a warrant was issued for his arrest[,] . . . investigators could not locate him in Pittsburgh[,] . . . evidently because [the defendant] had fled the jurisdiction." Id. ¶ 6. It was only "[o]n January 16, 2020, [that the defendant] was arrested in Charlotte, North Carolina, where he had been engaged in conduct almost identical to that which gave rise to his federal Indictment" in this case. Id.

Here, "[t]he risk of flight has been established by the [g]overnment well beyond the requisite preponderance of the evidence standard[,]" United States v. Cole, 715 F. Supp. 677, 680 (E.D. Pa. 1988), due to the defendant's demonstrated history of flight and submission of forged documents in explanation for his failure to appear for a court proceeding, see Gov't's Bond Submission ¶¶ 2–6. Although the Court has no reason to question the defendant's compliance with his conditions of release during the pendency of this case, his recent compliance does not sufficiently assure the Court that, absent the location monitoring and curfew, he would continue to appear for court proceedings as required. See 18 U.S.C. § 3142(c)(1)(B) (empowering the Court to "order [ ] pretrial release . . . subject to the least restrictive [ ] condition, or combination of conditions, that such judicial officer determines will reasonably

assure the appearance of the person as required and the safety of any other person and the community").

Accordingly, the Court concludes that location monitoring is one part of the "least restrictive . . . combination of conditions[,]" id., that will "assure the [defendant's] appearance . . . as required[,]" id., and is not "excessive" in light of the government's interest in ensuring that the defendant appears in Court, Salerno, 481 U.S. at 754.[10]

The Court will now turn to the defendant's arguments that the conditions of pretrial release imposed by the Court pursuant to § 3142 are unconstitutional.

### 2. Fourth Amendment Challenge

Beginning with the defendant's Fourth Amendment challenge, the Court concludes that it need not address the merits of this challenge. Although the defendant argues that "by having [his] internet [m]onitored, that is a [Four]th Amendment [v]iolation of [p]rivacy[,]" ECF No. 218 at 1, as noted above, see supra Section III.E.1, the Court has concluded that this condition is no longer necessary and will be removed. Accordingly, because the Court has already determined that it will grant the relief the defendant has requested, the Court need not reach the merits of the defendant's challenge to this condition as unconstitutional under the Fourth Amendment.

### 3. Fifth Amendment Challenge

Turning to the defendant's Fifth Amendment challenges, the Court concludes that it must deny the defendant's motions based on these arguments. The Court will first address the

---

[10] At the July 27, 2023 evidentiary hearing, the Court considered further argument on the defendant's conditions of release and modified the Court's Order Setting Conditions of Release, ECF No. 59, to remove the location monitoring condition. See Order at 1–2 (July 31, 2023). Specifically, the Court ordered:

> The defendant shall no longer be subject to location monitoring as directed by the Pretrial Services Office or supervising officer. However, the defendant shall continue to be subject to a curfew between the hours of 10:00 p.m. and 5:00 a.m. The defendant shall also contact his supervising officer daily to notify the supervising officer of his whereabouts.

Id.

defendant's arguments concerning procedural due process, before turning to his substantive due process arguments, and, finally, his equal protection arguments.

### a. Procedural Due Process Challenge

The defendant argues that he "never had any opportunity to [o]bject to the proposed action before a fair and [n]eutral [d]ecision [m]aker[, a]gain [v]iolating [his] . . . [Fifth] Amendment" rights.  ECF No. 218 at 1.  The record in this case reflects that this statement is simply untrue.[11]  After initially waiving his right to a detention hearing, see Waiver of Detention

---

[11] In this footnote, the Court will set forth the full history of the proceedings regarding the defendant's pre-trial detention and release in this case to dispel any notion that the defendant has not been afforded the full complement of due process regarding his liberty pre-trial.

Following the defendant's arrest on February 4, 2020, the defendant had his initial appearance before Chief Magistrate Judge Eddy on March 4, 2020.  See Record of Magistrate's Proceedings at 1 (Mar. 4, 2020), ECF No. 15. During the hearing, the defendant "waive[d his] right to a detention hearing at th[at] time[,] reserving the right to request a detention hearing if and when the issue becomes relevant."  Waiver of Detention Hearing at 1, ECF No. 17.  On April 20, 2020, the defendant filed a motion seeking a detention hearing, see Motion to Schedule a Detention Hearing at 1–2, ECF No. 28, and, on April 21, 2020, Judge Eddy issued an Order directing "counsel for the [g]overnment, counsel for the [d]efendant, and the Probation Office [to] confer regarding [the d]efendant's [m]otion to determine if a release plan can be agreed to[,]" Text Order (Apr. 21, 2020), ECF No. 33.  However, on April 23, 2020, the defendant withdrew his motion seeking a detention hearing.  See Notice of Withdrawal of Motion to Schedule Detention Hearing at 1, ECF No. 34.

On June 26, 2020, the defendant filed a second motion to schedule a detention hearing.  See Motion to Schedule Detention Hearing ([w]ith Citation to Authority) at 1, ECF No. 52.  On July 8 and 13, 2020, the Court held a detention hearing and Judge Lenihan "release[d] the [d]efendant on a $50,000 unsecured appearance bond" into the custody of "Lorena Stewart . . . as a third-party custodian[.]"  Min. Entry (July 13, 2020), ECF No. 56.  In addition, Judge Lenihan ordered that the defendant be subject to home detention, location monitoring, and electronic monitoring.  See Order Setting Conditions of Release at 2 (July 13, 2020), ECF No. 59.

On July 30, 2020, the Probation Office filed a petition asking the Court to add three additional conditions of pretrial release that would (1) "preclude[ the defendant] from seeking and/or accepting any type of employment involving sales, marketing, solicitation of funds, or any other position whereby he would have access to a customer's personal or financial information[,]" (2) "require[ the defendant] to disclose his criminal history to his employer[,]" and (3) permit the defendant to "use a computer in connection with [his] employment . . . , provided [that] the defendant notifies [his] employer of the nature of the conviction or charge."  Petition for Action on Conditions of Pretrial Release at 1, ECF No. 67.  The next day, July 31, 2020, Judge Ambrose granted the Probation Office's petition and modified the defendant's conditions of pretrial release to include the three additional conditions.  See Order of Court (July 31, 2020), ECF No. 69.

Also on July 31, 2020, the defendant filed a motion to modify his conditions of pretrial release to permit him "unrestricted access to a computer and the Internet[,]" Motion to Modify Release Conditions ¶ 4, ECF No. 68, as well as a motion seeking reconsideration of Judge Ambrose's modification of his release conditions in response to the Probation Office's petition, see Motion to Reconsider the Order Granting Petition for Action on Conditions of Pre-Trial Release (ECF 69) at 1–3, ECF No. 70.  On August 14, 2020, following the submission of responses to the

(continued . . .)

Hearing at 1, ECF No. 17, the defendant requested, <u>see</u> Motion to Schedule Detention Hearing

([w]ith Citation to Authority] at 1, ECF No. 52, and was granted an initial detention hearing

before Judge Lenihan on July 13, 2020, <u>see</u> Order of Court (June 29, 2020), ECF No. 53; Min.

Entry (July 13, 2020).  Subsequently, the defendant filed five motions seeking review of his

conditions of pretrial release.  <u>See</u> Motion to Modify Release Conditions ¶ 4, ECF No. 68

(seeking to modify his conditions of pretrial release to permit him "unrestricted access to a

computer and the Internet"); Motion to Reconsider the Order Granting Petition for Action on

Conditions of Pre-Trial Release (ECF 69) at 1–3, ECF No. 70 (seeking reconsideration of Judge

Ambrose's addition of three conditions regarding his employment); Motion for Clarification of

Order Granting Petition for Action on Conditions of Pre-Trial Release at 1, ECF No. 78 (seeking

clarification of his release conditions); Motion to Modify Release Conditions at 2, ECF No. 92

(seeking "remov[al of] the condition of home detention with electronic monitoring or in the

alternative to replace home detention with a curfew"); Motion to Modify Release Condition of

Location Monitoring ¶ 10, ECF No. 106 (seeking to "remov[e] the condition of location

---

(. . . continued)

defendant's motions by the Probation Office and the government, <u>see</u> Response to Defense Motion(s) at 1–2, ECF No. 74; Response to Defen[dan]t's Motion for Reconsideration at 1–3, ECF No. 76, Judge Ambrose denied the defendant's motions, concluding that "[t]he conditions imposed by Judge Lenihan following the detention hearing, as modified by this Court[']s Order dated [July 31, 2020], are reasonably necessary to assure the safety of the community[,]" Text Order (Aug. 14, 2020), ECF No. 77.  After the defendant requested clarification of his release conditions, <u>see</u> Motion for Clarification of Order Granting Petition for Action on Conditions of Pre-Trial Release at 1, ECF No. 78, Judge Ambrose clarified that "[t]he [d]efendant is precluded from accepting any jobs that would give him access to customers' personal or financial information[,]" "is required to disclose [ ] his criminal history to any employer and [the] Probation [Office] is permitted to verify that he has done so[,]" and "can use a computer in connection with a job only if he makes the required disclosures to the employer and [the] Probation [Office] has verified[,]" Text Order (Aug. 17, 2020), ECF No. 79.

On October 24, 2020, the defendant filed a second motion to modify his conditions of release "to remove the condition of home detention with electronic monitoring or in the alternative to replace home detention with a curfew[.]"  Motion to Modify Release Conditions at 2, ECF No. 92.  On November 5, 2020, Judge Ambrose granted the defendant's motion, modifying the defendant's conditions of release "from home detention to a curfew[.]" Order of Court at 1 (Nov. 5, 2020), ECF No. 97.  On June 23, 2021, the defendant filed a third motion to modify his conditions of release to "remov[e] the condition of location monitoring[,]" Motion to Modify Release Condition of Location Monitoring ¶ 10, ECF No. 106, which Judge Ambrose denied, <u>see</u> Order of Court at 1 (June 30, 2021), ECF No. 110.

monitoring").  All of these motions were heard and resolved by Judge Ambrose in a timely

fashion.  See Text Order (Aug. 14, 2020), ECF No. 77 (concluding that "[t]he conditions

imposed by Judge Lenihan following the detention hearing, as modified by this Court[']s Order

dated [July 31, 2020], are reasonably necessary to assure the safety of the community"); Text

Order (Aug. 17, 2020), ECF No. 79 (clarifying the defendant's conditions of release); Order of

Court at 1 (Nov. 5, 2020), ECF No. 97 (modifying the defendant's conditions of release "from

home detention to a curfew"); Order of Court at 1 (June 30, 2021), ECF No. 110 (denying the

defendant's motion to remove the location monitoring condition).  Accordingly, the Court

concludes that, contrary to the defendant's assertion, he has had ample "opportunity to [o]bject to

the [conditions of his release] before a fair and [n]eutral [d]ecision [m]aker[,]" ECF No. 218 at 1,

and therefore the Court must deny his procedural due process motions.  See Salerno, 481 U.S. at

751–52 (holding that the federal pretrial detention hearing procedures do not violate the Due

Process Clause of the Fifth Amendment).

> **b.    Substantive Due Process Challenge**

Turning to the defendant's substantive due process arguments, the Court concludes that it

must deny the defendant's motion based on this theory also.  The defendant argues that the

"ankle monitoring" ordered as a condition of his pretrial release "[v]iolat[es his] . . . [s]ubstantive

[d]ue process [ ] privacy [rights.]"[12]  ECF No. 218 at 1.  "The substantive due process clause is a

'component of the [Fifth Amendment] that protects individual liberty against certain government

actions regardless of the fairness of the procedures used to implement them.'"  Dunkel v. Mt.

---

[12] The defendant also argues that the "monitoring [of his] internet" "[v]iolat[es his] . . . [s]ubstantive [d]ue process
[ ] privacy [rights.]"  ECF No. 218 at 1.  However, as noted above with respect to the defendant's Fourth
Amendment argument, see Section III.E.2, the Court has already removed this condition.  Therefore, the Court will
not reach the merits of the defendant's challenge to his electronic monitoring as unconstitutional under the
substantive due process clause.

Carbon/N. Manheim Fire Co., 970 F. Supp. 2d 374, 380 (M.D. Pa. 2013) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992)) (internal quotation marks omitted).  "[T]o prevail on a substantive due process claim," the defendant must demonstrate that his "particular interest at issue is protected by the substantive due process clause and [that] the government's deprivation of that protected interest shocks the conscience."  Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 190 (3d Cir. 2009) (internal quotation marks omitted).

In the context of pretrial detention in criminal cases, "substantive due process protects freedom from government custody, detention, or other forms of physical restraint prior to any determination of guilt."  Holland v. Rosen, 895 F.3d 272, 293 (3d Cir. 2018) (internal quotation marks omitted).  "The Supreme Court has explained that an arrestee's right to freedom from pretrial detention is subordinated to other interests only in specific circumstances—particularly where there has been an adjudication that detention is necessary because an 'arrestee presents an identified and articulable threat to an individual or the community,'" Steele v. Cicchi, 855 F.3d 494, 502 (3d Cir. 2017) (quoting Salerno, 481 U.S. at 751), "or to 'ensure [an arrestee's] presence at trial,'" id. (quoting Bell v. Wolfish, 441 U.S. 520, 523 (1979)) (alteration in original).

Here, as discussed above, see supra Section III.E.1, the Court has found that the defendant poses a flight risk due to his prior failures to appear for a court proceeding.  Accordingly, location monitoring is necessary "to 'ensure [his] presence at trial[.]'"  Steele, 855 F.3d at 502 (quoting Bell, 441 U.S. at 523).  Particularly given the Supreme Court's instruction "that an arrestee's right to freedom from pretrial detention is subordinated to other interests . . . where there has been an adjudication that detention is necessary . . . 'to ensure [an arrestee's] presence at trial,'" id. (quoting Bell, 441 U.S. at 523) (alteration in original), the Court cannot

conclude on the record before it that requiring monitoring of the defendant's location "reach[es] the conscience-shocking level[,]" Vargas v. City of Philadelphia, 783 F.3d 962, 973 (3d Cir. 2015) (internal quotation marks omitted).  Accordingly, the Court must deny the defendant's motion based on substantive due process.

### c.   Equal Protection Challenge

Turning to the defendant's Equal Protection clause arguments, the Court concludes that the defendant's motions based on this theory must be denied.  The defendant argues that the conditions of release imposed by the Court amount to "racial [d]iscrimination[.]"  ECF No. 218 at 2.  However, the "[d]efendant summarily alleges that his equal protection rights have been violated without providing any support whatsoever for a finding that he was discriminated against or treated unequally in any manner."  United States v. Telfair, No. 08-cr-0757 (DMC), 2008 WL 5188846, at *4 n.3 (D.N.J. Dec. 10, 2008).  Accordingly, the Court must deny his motions based on the denial of equal protection.

### 4.  Eighth Amendment Challenge

Next, the Court considers the defendant's motions arguing that "hav[ing] this ankle monitor on [his] leg 24/7 as if [he] was an animal . . . is a[n Eighth] Amendment violation."  ECF No. 223 at 1–2.  The Eighth Amendment provides that "[e]xcessive bail shall not be required[.]"  U.S. Const. amend. VIII.  However, a defendant's "right to bail . . . is not absolute."  Salerno, 481 U.S. at 753.  "The only arguable substantive limitation of the Bail Clause is that the [g]overnment's proposed conditions of release or detention not be 'excessive' in light of the perceived evil."  Id. at 754.  In order "to determine whether the [g]overnment's response is excessive, [the Court] must compare that response against the interest [that] the [g]overnment seeks to protect by means of that response."  Id.

Here, the Court concludes that the condition of release requiring the defendant to be subject to location monitoring is not "[e]xcessive[.]"  U.S. Const. amend. VIII.  As discussed above, see supra Section III.E.1, the defendant has a demonstrated history of flight, and location monitoring is one part of the "least restrictive . . . combination of conditions[,]" 18 U.S.C. § 3142(c)(1), that will "assure the [defendant's] appearance . . . as required[,]" id.  Accordingly, the Court concludes that location monitoring is not "excessive" in light of the government's interest in ensuring that the defendant appears in court when required, Salerno, 481 U.S. at 754, and the Court must therefore deny the defendant's Eighth Amendment motions.

**5. Thirteenth Amendment Challenge**

Turning to the defendant's Thirteenth Amendment argument, the Court concludes that it must deny these motions also.  The defendant argues that, "[d]ue to the racial climate of this country, [him] being a person of color and treating [him] as if [he] was a [s]lave[,]" the conditions of release placed upon him are a "[v]iolation of the [Thirteen]th Amendment."  ECF No. 218 at 3.  The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."  U.S. Const. amend. XIII.  However, the defendant's "complaints are devoid of any allegations of forced labor."  Johnson v. Anhorn, 334 F. Supp. 2d 802, 806 (E.D. Pa. 2004); see United States v. Kozminski, 487 U.S. 931, 942 (1988) ("The primary purpose of the [Thirteenth] Amendment was to abolish the institution of African slavery as it had existed in the United States at the time of the Civil War, but the Amendment was not limited to that purpose; the phrase 'involuntary servitude' was intended to extend to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results." (internal

quotation marks omitted)).  Absent any such allegations, which the defendant has not made, the

Court must deny his motions based upon the Thirteenth Amendment.

Therefore, having evaluated both the extent to which the defendant's conditions of

pretrial release should be modified pursuant to 18 U.S.C. § 3142, and the defendant's

constitutional challenges to his release conditions, the Court will grant the defendant's motions

to the extent that they seek the removal of the condition that the defendant be subject to

electronic monitoring, in light of the government's concession that this condition is no longer

necessary, and deny the defendant's motions in all other respects.  See ECF No. 215; ECF

No. 216; ECF No. 218; ECF No. 223.

**F.  Miscellaneous Challenges (ECF Nos. 180, 183, 191, 192, & 199)**

Finally, the Court turns to the defendant's remaining motions.  In these motions, the

defendant (1) makes a number of requests and claims further pertaining to his theory that he is "a

private sovereign," ECF No. 199 at 1; see also ECF No. 180; ECF No. 183; ECF No. 191; and

(2) "request[s] . . . [p]olygraph testing[] to support statements made on [his a]ffidavits[,]" ECF

No. 192 at 1.

**1.  The Defendant's Sovereign Citizen Motions (ECF Nos. 180, 183, 191, & 199)**

First, the defendant makes a number of requests based upon his assertion that he is "a

private sovereign[,]" ECF No. 199 at 1, including (1) a demand for "[e]vidence" regarding a

"[m]aritime [c]ontract[,]" which he asserts is required for this case, ECF No. 183 at 1; (2) a

notice of his "[c]laiming [an i]nt[e]rest in the [e]ntire case as the [g]rantee[,]" ECF No. 191 at 1;

(3) a request for "[d]ismissal of [all] claims and charges against [him] based upon . . . []his

[affidavit of averment,]" ECF No. 180 at 2; and (4) a request, "as the third party of the trust[,] [ ]

ask[ing] the [C]ourt to dismiss the case due to owning all fo[u]r co[]rners of this case in the trust

established[,]" ECF No. 199 at 1.  It appears from these filings that the defendant adheres

to the belief that even though he was born and resides in the United States, he is his own sovereign and is therefore not a United States citizen.  This belief is the hallmark of the sovereign citizen movement.  So-called sovereign citizens believe that they are not subject to government authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings.

Smithson v. York Cnty. Ct. of Common Pleas, No. 15-cv-1794, 2016 WL 4521854, at *2 (M.D. Pa. Aug. 3, 2016) (quoting Gravatt v. United States, 100 Fed. Cl. 279, 282 (2011)) (footnote omitted).  However, as noted above, see supra Section III.D.2, the "claim[] that the [government] ha[s] no authority to incarcerate [the defendant] because he is a 'sovereign citizen' and thus not subject to the laws of the" United States is "a patently frivolous claim[,]" Smithson, 2016 WL 4521854, at *4.  Accordingly, the Court will deny all of the defendant's motions based upon this theory.  See ECF No. 180; ECF No. 183; ECF No. 191; ECF No. 199.

## 2. The Defendant's Motion for Polygraph Testing (ECF No. 192)

Turning to the defendant's request for "[p]olygraph testing[] to support statements made on [his a]ffidavits[,]" ECF No. 192 at 1, the Court concludes that it must also deny this motion. Citing case law regarding the admissibility of polygraph evidence at trial, see id. (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993); United States v. Posado, 57 F.3d 428, 434 (5th Cir. 1995); Washington v. Texas, 388 U.S. 14, 19–20 (1967); United States v. Piccinonna, 885 F.2d 1529 (11th Cir. 1989); United States v. Figueroa, 15 F.3d 706 (7th Cir. 1994)), the defendant requests "[p]olygraph testing . . . to help with [his d]efense and to support [his s]tatements of [f]act on [his a]ffidavits[,]" id.  In response, the government argues that the defendant "cites no legal authority for granting his requests, and the government is aware of none[,]" and thus "[t]h[is] motion[] should be denied."  Gov't's 4th Opp'n at 19.

None of the cases cited by the defendant support granting a request for a polygraph test prior to trial.  See Daubert, 509 U.S. at 597 (holding that "the Rules of Evidence—especially

Rule 702—do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand"); Posado, 57 F.3d at 434 (holding that polygraph tests are not per se inadmissible); Washington, 388 U.S. at 23 (holding that a defendant "was denied his right to have compulsory process for obtaining witnesses in his favor because [Texas] arbitrarily denied him the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense"); Piccinonna, 885 F.2d at 1537 (holding that a "trial court may exclude polygraph expert testimony because [(]1) the polygraph examiner's qualifications are unacceptable; [(]2) the test procedure was unfairly prejudicial or the test was poorly administered; or [(]3) the questions were irrelevant or improper"); Figueroa, 15 F.3d at 711 (concluding that an attorney was not ineffective when he "acquiesced to [ ] polygraph testimony" in order "to attack [a] confession," but then "discarded the plan" in order "to quell his client's unanticipated agitation").  Moreover, as discussed previously, see supra Section III.A–F, none of the defendant's motions have legal merit, and the Court has no basis to find that polygraph-supported statements by the defendant would provide a basis for disturbing its conclusions regarding any of his motions.[13]  Accordingly, the Court will deny the defendant's request for polygraph testing.  See ECF No. 192.

---

[13] Although the "[Third Circuit] has not adopted a per se exclusionary rule regarding [the admissibility of] polygraph evidence[,]" at trial, United States v. Lee, 315 F.3d 206, 214 (3d Cir. 2003), polygraph results are generally not admitted in criminal cases in this District, see United States v. Kubini, No. 11-cr-14, 2015 WL 418220, at *6 (W.D. Pa. Feb. 2, 2015) ("The parties have not pointed the Court to any case within the Third Circuit which admitted polygraph evidence in a criminal trial and the Court has not located any reported decisions in this Circuit where such evidence was admitted.").  To the extent that the defendant seeks polygraph testing to support his defenses at trial, as noted above, see supra Section III.F.2, after the defendant filed this motion on October 26, 2022, see ECF No. 192 at 1, he requested the assistance of counsel during trial, see Pre-Trial Scheduling Order at 2 n.1 (Apr. 27, 2023).  Consequently, trial counsel Schorr is responsible for the presentation of the defendant's defense at trial.  In the event that trial counsel Schorr determines that polygraph testing would be an appropriate use of resources in the preparation of the defendant's defense and that the results of such testing would arguably be admissible in the defendant's trial, he may file a new motion requesting such testing.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must (1) deny the defendant's motions to dismiss, <u>see</u> ECF No. 131; ECF No. 133; ECF No. 138; ECF No. 176; ECF No. 181; ECF No. 182; ECF No. 184; ECF No. 196; ECF No. 200; ECF No. 201; ECF No. 203; ECF No. 214; ECF No. 221; (2) grant the defendant's motions seeking access to grand jury materials to the extent that they seek the opportunity "to inspect, reproduce, and copy[,]" 28 U.S.C. § 1867(f), statistical information regarding the composition of the grand jury, and deny these motions to the extent they seek additional relief, <u>see</u> ECF No. 137; ECF No. 186; (3) deny the defendant's motions challenging the procedures before the grand jury, <u>see</u> ECF No. 138; ECF No. 186; ECF No. 187; (4) deny as moot in part and deny as premature in part respectively the defendant's motion for disclosure of <u>Brady</u> and Jencks Act material, <u>see</u> ECF No. 185; (5) deny in part and deny without prejudice in part the defendant's motion <u>in limine</u> to exclude certain evidence, <u>see</u> ECF No. 205; (6) deny the defendant's motions to suppress evidence pursuant to the Fourth Amendment, <u>see</u> ECF No. 177; ECF No. 178; (7) deny the defendant's motions challenging this Court's jurisdiction, <u>see</u> ECF No. 175; ECF No. 179; ECF No. 189; ECF No. 201; ECF No. 224; (8)  grant in part and deny in part the defendant's motions for modification of the conditions of his pretrial release, <u>see</u> ECF No. 215; ECF No. 216; ECF No. 218; ECF No. 223; and (9) deny all of the defendant's remaining motions, <u>see</u> ECF No. 180; ECF No. 183; ECF No. 191; ECF No. 192; ECF No. 199.

**SO ORDERED** this 22nd day of August, 2023.

_____
REGGIE B. WALTON
United States District Judge